[Crim. No. 3436. First Dist., Div. Two. May 21, 1958.]

THE PEOPLE, Respondent, v. VERA ODMANN et al., Appellants.

Stanley Odmann, in pro. per., Edward T. Mancuso, Public Defender (San Francisco), and Waldo F. Postel, Jr., Deputy Public Defender, for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

DRAPER, J.—Defendants, husband and wife, were tried under an indictment in three counts, charging (1) the murder of Estelle Bach, (2) employment of an instrument with intent to procure the abortion of Lois Moore, and (3) a like offense upon Estelle Bach. The murder charge was based upon evidence that Mrs. Bach died as the result of an abortion performed upon her after that charged in Count 3. Jury verdict found each defendant guilty of all three charges, and fixed the murder as of the second degree. Defendants appeal from the ensuing judgment, and from denial of their motions for new trial.

A principal contention of appellants arises from the cross-examination of Mr. Odmann. Mrs. Odmann did not take the stand. After the prosecution rested, counsel for defendants stated: ". . . as to Count 2 of the indictment, charging the defendants with violation . . . as to Lois Moore, the defense will rest; and, proceeding on Counts 1 and 3, I will call Mr. Odmann." Defendant husband testified, on direct, that he had performed two attempted abortions on Mrs. Bach, each by insertion of a catheter. As to each of these events, and his meetings with Mrs. Bach in connection therewith, he carefully limited his recital of activities to the first person singular, thus impliedly, although not directly, negativing the testimony of the accomplice Anderson implicating Mrs. Odmann in the Bach abortions. Odmann also testified that when he and his wife met Mrs. Bach in her apartment, after the first or second abortion, Mrs. Odmann did not know of the abortions. He testified that on this occasion appellants were introduced as "Mr. and Mrs. Collins," thus contradicting the testimony of the witness Gudelj, who had testified that the wife was intro-

duced as "Dr. Collins." Odmann denied performing a third abortion upon Mrs. Bach, and denied being present at any time when a curettement was performed upon her. His testimony on direct did not deal at all with the Moore abortions.

It is apparent that the purpose and effect of his testimony was to absolve his wife of all connection with the Bach abortions, to negative the corroborating evidence which tended to establish her guilty knowledge of them, and, as to himself, to deny participation in the abortion which caused Mrs. Bach's death. On cross-examination, he testified that his wife is a registered nurse and an anesthetist. He denied that he acquired his knowledge of the performance of abortions through observation of such operations performed by his wife, denied that she performed abortions upon Lois Moore and a girl from Sonoma. He denied the testimony of another witness that Mrs. Odmann was the woman with whom he registered at the motel where one of the two abortions of Lois Moore was performed, on the date of that abortion, and that she was the person whom he had registered as his wife at other motels where abortions had been performed. He admitted that he could not perform an abortion by curettement. All this cross-examination was over objection on the part of Mrs. Odmann that it was in violation of the privilege of a spouse, and the further objection, apparently of both parties, that it was outside the scope of the direct examination.

■ "Neither husband nor wife is a competent witness for or against the other in a criminal action . . . to which one or both are parties, except with the consent of both . . ." (Pen. Code, § 1322.) ■ Failure to raise the objection of a spouse's incompetency amounts to consent to his testimony. (*People* v. *Singh,* 182 Cal. 457, 483 [188 P. 987]; *People* v. *Van Skander,* 20 Cal.App.2d 248, 254 [66 P.2d 1228].) ■ Here there was no objection by defendant wife to the calling or the direct examination of her husband. He, of course, did not object to being questioned by his own attorney. In view of the fact that the husband was called and questioned by counsel who acted jointly for husband and wife, there is no question that consent to the direct examination was given by both defendants. ■ It is obvious that one who consents to direct examination of her spouse by their joint counsel cannot rely upon her privilege to bar all cross-examination. (8 Wigmore on Evidence, 266-267.) We find no California decision defining the extent of this waiver. ■ Reason and fairness, however, dictate that the waiver extend to neither more

nor less than the cross-examination which would be permitted if no issue of privilege existed. Any lesser standard of waiver would permit a spouse the full benefit of the privileged testimony, but would deny the opposing party the right to test its accuracy. The issue before us, then, is the scope of cross-examination permissible upon the husband's testimony on direct.

Both appellants assert that the cross-examination was wholly beyond the scope of the direct, to the prejudice of each. ''A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts concerning which he testifies.'' (*People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338].) As to Mrs. Odmann, her husband's testimony on direct amounted at the least to an ''indirect'' denial of her participation in each and all of the Bach abortions. The husband's direct examination had contained at least an implied admission that he was in the ''business'' of abortion, and a direct admission that he had performed two abortions upon Mrs. Bach. It thus was within the scope of proper cross-examination to attempt to show an unvarying practice of joint performance of all abortions by husband and wife. Also, since the direct examination had negatived knowledge by Mrs. Odmann of her husband's performance of two abortions upon Mrs. Bach, it was relevant to ask him about her knowledge of his ''abortion business'' generally. He denied that she ever knew anything about his performing abortions. In the light of this denial, it was proper to ask him about one of the Moore abortions, which the victim had testified was performed by Mrs. Odmann with her husband's assistance. Similarly, it was proper, in view of his denial of participation in a curettage performed upon Mrs. Bach, to ask whether he was able to perform such an operation and, upon his denial, to inquire about his aiding his wife in such an operation upon Mrs. Moore, as to which evidence had been introduced in the prosecution's case. It is true that the cross-examination was not conducted in the order here stated. However, there is no indication that the witness was in any way misled or tricked, by the order in which the questions were asked, into answers which are here relied upon to show admissibility of the evidence. We conclude that the cross-examination was within proper bounds as to both defendants. (*People*

698

v. *Zerillo*, 36 Cal.2d 222 [223 P.2d 223].) Since it was within the permissible scope of cross-examination, it did not infringe upon the privilege of Mrs. Odmann.

■ Appellant wife contends that the evidence is insufficient to corroborate the testimony of Lois Moore as to Count 2. Such corroboration is required. (Pen. Code, § 1108.) The complainant testified that two such operations were performed upon her, each in a motel room. As to the first, the motel manager identified defendant husband as the man who had registered under an assumed name on the same date for the same room, with his wife, who was identified by the manager as Mrs. Odmann. He also testified that after they left he looked into the room and saw a dark-haired woman in bed, and had a conversation with her. Lois Moore also had testified to this conversation. As to the second operation, the wife of the owner corroborated the victim's description of the room, and the registration card to "J. Burns and wife" was shown to be in the handwriting of Odmann. Additionally, a kit of medical instruments of the type used in abortions was in appellants' possession when they were arrested, and they made admissions or evasive statements to the police. Like facts have been held to have corroborative value. (*People* v. *Reimringer*, 116 Cal.App.2d 332 [253 P.2d 756]; *People* v. *Morris*, 110 Cal.App.2d 469 [243 P.2d 66]; *People* v. *Malone*, 82 Cal. App.2d 54 [185 P.2d 870].) The testimony of the husband, although he is an accomplice, also can be looked to for corroboration of that of the victim. (*People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720].) There being substantial corroborative evidence, the question whether, by itself, it is as compatible with innocence as with guilt is a question for the jury. (*People* v. *Berger*, 128 Cal.App.2d 509, 513 [275 P.2d 799].)

■ Appellants attack the sufficiency of the evidence to support their conviction of the murder of Mrs. Bach. It is conceded that three abortions were performed upon Mrs. Bach. Appellant husband admitted performing the first two abortions, by catheter, one February 2 or 3, 1955 and one February 18. Inferences as to Mrs. Odmann's participation, although it was denied by the husband, could be drawn from these admissions. The evidence shows that Mrs. Bach died of the effects of an abortion performed by curettement shortly before March 18, and that this abortion could not have been self-induced. One Anderson, who arranged for the first abortion upon Mrs. Bach, testified that appellant husband agreed to perform it, that payment to him was made in the presence

of appellant wife, that Anderson took Mrs. Bach to an automobile occupied by both appellants on the evening of the first abortion, that he arranged with appellant husband for performance of the second, and that after March 8 he was present at a conversation between Mrs. Bach and appellant husband, in which Mrs. Bach said that she was still pregnant. Immediately thereafter, Odmann told Anderson, when the latter complained of the treatment, that "something will be done" and that "he would take care of everything." Although circumstantial, this evidence supports the inference that appellants performed the third and final operation. Of course, Anderson is an accomplice and his testimony, to support the conviction, must be corroborated. The witness Gudelj testified that he went to see Mrs. Bach at her apartment, by appointment, at a date which the jury could find to be after the second, and before the third, abortion. When he knocked, he heard Mrs. Bach say that he was a good friend, "You don't have to be afraid." When he entered, both appellants were present. Appellant wife was introduced as "Dr. Collins," and appellant husband was introduced by an assumed name. In a statement to police, appellant husband admitted having investigated the cause of Mrs. Bach's death before he was arrested. When appellants were arrested, medical instruments identified as of the type used to perform the operation which caused Mrs. Bach's death were in their possession. Under the rules governing corroboration, previously discussed, the conviction of both appellants finds support in the record. The evidence is largely circumstantial, but the question whether it warrants the inference of guilt is for the jury, and not for the reviewing court. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

Appellants complain of the admission in evidence of statements made by them to police shortly after they were arrested. We have examined these statements in detail, and find them properly admitted. Similarly, we find appellants' assertions of misconduct of the prosecuting attorney to be without merit.

The physician who treated Mrs. Bach in her last illness testified, over objection, that she gave him a history in which she said that an abortion by instrument was performed upon her two or three days before she entered the hospital. Upon overruling the objection, the court admonished the jury that the evidence of Mrs. Bach's statement to the doctor was not admitted for the truth of the statements, but only as one of

the bases of the opinion formed by the doctor. This was not error. (*People* v. *Brown*, 49 Cal.2d 577, 586 [320 P.2d 5].)

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

The petition of appellant Stanley Odmann for a rehearing was denied June 20, 1958, and his petition for a hearing by the Supreme Court was denied July 16, 1958.