HARRIS, Judge.
Appellant, Ronald Harvey Paulson, was indicted for forgery second degree by the Mobile County Grand Jury during its June, 1982, session. On December 8, 1982, he was found guilty as charged and was sentenced to ten years in the state penitentiary.
Kathleen Ann Paulson, appellant’s wife, was arrested on May 15, 1982, at Bel Air Mall in Mobile after giving Zales Jewelry Store a forged certified check for four thousand four hundred twenty-five dollars ($4,425.00). A search of her purse at the time of arrest produced three additional forged cashier’s checks, and a search of the car she was driving disclosed: one IBM typewriter Selectric II, one address box of Weston bond fluorescent white Commercial Guaranty Bank cashier’s checks, one Paymaster cheek writer, several hundred blank birth certificates, one trash bag with defective obliterated cashier’s checks, a cashier’s check on the American National Bank, one checkbook in the name of Ronald Paulson, the account on Citizens National Bank in Meridian, Mississippi.
*86 Appellant was arrested four days later at Knollwood Hospital in Mobile.
Mrs. Paulson waived her privilege of testimonial exemption in return for a plea bargain entered into with the District Attorney. She testified that she and appellant were married in Livingston, Alabama, on May 14, 1982, the day before her arrest. On direct examination by the State she recounted events prior to the marriage.
According to Mrs. Paulson, she and appellant owned three businesses in Meridian, Mississippi, were over-extended and were in financial trouble. Appellant, a printer by profession, devised a scheme whereby the two of them would forge certified checks and with them obtain very expensive diamonds in Alabama. They would then return to Mississippi to sell them.
Appellant’s plan was that he would print the checks and that she would pass them. He convinced her that, as an ex-felon, someone might recognize him, but that, if she wore neutral colored clothing and a wig, she would be more difficult to identify. In furtherance of the conspiracy, they purchased an authentic cashier’s check to use as a model, special paper used to print checks, and a wig and clothing for her.
On May 13, the couple went to Goldstein Jewelry Store in Mobile, so that appellant could guide her through a trial run of the plan. The two picked out a ring and talked with the sales clerk. They asked for a business card and requested that she write down the total price of the ring on the back of the card. Then they asked if she would accept a cashier’s check. Appellant explained to Mrs. Paulson that she was to bring the card with the amount back to him so that he could complete a forgery of the exact amount. She would sign the name Alta L. McAllister to the check, forging the signature of the bank’s authorizing officer.
It was Mrs. Paulson’s testimony that appellant devised the entire scheme and made the purchases pursuant to the plan. He printed the checks in Mississippi, where he used gloves to avoid leaving fingerprints, and planned to complete them in Mobile when she could determine the exact amounts required.
On May 14, after the two were married, she went to Zales Jewelry Store with a check made out according to the plan. The man who waited on her said that she would have to return the following day in order to give him time to verify the check. She was arrested the following day.
On cross-examination by the defense she testified that she saw appellant put the amounts on the checks with the Paymaster machine and that appellant purchased the equipment used and paid for their motel rooms.
Mr. Nick L. Horne, Jr., manager of the Zales Jewelry Store in Bel Air Mall, testified that on Friday, May 14, 1982, at around 3:30 p.m., he negotiated a sale with a woman who identified herself as Marilyn Karn. She looked at a lady’s diamond solitaire ring valued at four to five thousand dollars. She requested that the ring be sized and said that she would be back. She returned after 5:00 p.m. with a certified check in the amount of $4,425.00. The bank was closed by this time, but Mr. Horne, anxious to make the sale, called Mrs. McAllister at home. She was authorized to sign cashier’s checks for Commercial Guaranty Bank and her purported signature appeared on the check, but he learned that she had not signed the check. He alerted mall security and the other stores in the mall, and the following day Mr. Frank, at Goldstein Jewelry Store, reported that he had an appointment at 2:00 or 2:30 that afternoon, with a woman answering the description given by Mr. Horne. Mr. Horne came at that time, accompanied by mall security and Mobile police officers, and identified the woman, Kathleen Paulson, who was then arrested.
The president of the First Small Business Investment Company identified appellant as the person to whom he sold a Paymaster check printer, and an employee of a printing company identified appellant as the person who bought special paper used to print checks.
*87 Mr. William G. Clarke, operator of Clarke Jewelers, testified that he accepted a forged certified check for $3,400.00 in exchange for a diamond ring from a woman who identified herself as Marilyn Earn.
Ronald Paulson testified on his own behalf, and denied that he .had planned, conspired, executed, or even knew about the forgery of the cashier’s checks. He stated that he was forty years old and had been a printer for twenty-three years. He admitted to three previous convictions: one for possession of a counterfeit bill, one for theft by deception, and one for issuing worthless checks. He explained that he purchased the Paymaster check writer for his wife to use in one of their businesses, that the other equipment discovered in their car was used in their businesses, and that he was in Mobile for the purpose of locating employment with a printing company.
On cross-examination, appellant admitted that he had not applied with any printing companies in Mobile, nor talked to anyone about a job. Instead, he had begun to drink and had stayed drunk most of the time he was there, finally ending up in the hospital, where he was arrested. He explained this behavior by stating that he was a sometime alcoholic and that he had had a fight with his wife concerning their financial problems.
Two issues are raised for consideration on appeal. Appellant first contends that the testimony of his wife against him was not voluntarily given and should not have been admitted into evidence.
Section 12-21-227, Code of Alabama 1975, states:
“Husband, and wife for or against one another. The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do.”
This statute was interpreted in Arnold v. State, 353 So.2d 524, 526 (Ala.1977), where the court stated that “... the Alabama Legislature abolished the rule of incompetency and adopted the present statutory language which allows the spouse to testify voluntarily.”
Appellant contends that, because of her plea bargain arrangement with the District Attorney, his wife’s decision to testify was not made voluntarily. It is clear, however, that the testimonial exemption of a spouse in a criminal trial is a privilege of the witness and may be waived for whatever reason the witness might have. Morrison v. State, 382 So.2d 1187, 1189 (Ala.Cr.App.1980), quoting, Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837, cert. denied, 254 Ala. 74, 46 So.2d 847 (1950), held, in this vein:
“There is a duty on every person to testify in judicial proceedings, as the public has an interest in the proper and just conclusion of cases brought into the courts of a sovereign power. In the interest of certain policies certain classes of witnesses may be exempted from this duty, even though such exemptions may tend to interfere with full disclosure of facts. Among such classes of witnesses who may be exempted from testifying are attorneys who stand in relation of attorney and client to one of the parties litigant, priest in relation to confessor, etc., and since the enactment of Section 311, Title 15, Code of Alabama 1940, providing that husband and wife may testify either for or against each other in criminal cases, but shall not be compelled to do so, there may be added to this exempted class of witnesses, husband and wife. ‘This testimonial exemption is however a privilege, purely personal to the witness, and is solely a matter between the witness and the court.’ ”
In Morrison, supra, the witness spouse first stated that she would testify against her husband, then said that she was not sure and would rather not. After some discussion she finally decided in favor of testifying. Appellant in that case claimed that his wife had been coerced or intimidated into testifying, but the court found that the witness was properly advised of her privilege and testified voluntarily.
*88 In the case before us the record demonstrates that Mrs. Paulson was properly advised by the court of her right not to testify and that her reason for waiving that right was a plea bargain agreement with the District Attorney by which she hoped to receive a more lenient sentence. The record thus demonstrates that her testimony was voluntarily given.
Appellant next contends that Mrs. Paul-son’s testimony that he completed the forged cashier’s checks in Alabama using the Paymaster check writer should not have been admitted over his objection based on the marital privilege for confidential communications. The record demonstrates, however, that this testimony was elicited on cross-examination by the defense as follows:
“CROSS EXAMINATION
“BY MR. DEEN (Defense Attorney):
[[Image here]]
“Q. All right, and then he ran on the Paymaster Machine—you’re saying that he put the amount on—
“A. Yes.
“Q. —the checks?
“A. Yes.
“Q. And the case we have today he did it [sic] amount of $4,425.00 to Zales? “A. Yes, sir.
“Q. All right, and you saw him do all that?
“A. I was in the room with him, yes, sir.
“Q. Okay.
“MR. COPELAND: I’m sorry, I didn’t hear the answer.
“THE COURT: I was in the room with him.”
The defense counsel then continued to extensively examine Kathleen Paulson about the defendant’s criminal activity after the two were married on May 14.
“REDIRECT EXAMINATION
“BY MR. COPELAND (Assistant District Attorney)
“Q. All right. Now let’s talk a little bit, since the Defense Attorney asked the question, what has happened with these checks after you all were married? You say you all went to the LaQuinta Inn? “A. Yes.”
(emphasis added)
This was the first time that the State had elicited testimony from Kathleen Paulson regarding the defendant’s criminal activity after they were married, i.e., after cross-examination opened the door. Hence, the testimony that Kathleen Paulson gave about the defendant’s criminal activity was clearly proper. McDaniel v. State, 418 So.2d 932 (Ala.Cr.App.), cert. denied, 418 So.2d 934 (Ala.1982); Brown v. State, 392 So.2d 1248 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981).
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.