The **PEOPLE** of the State of Colorado, Petitioner,

v.

Charles Franklin
**PRONOVOST**, Respondent.

No. 88SC31.

Supreme Court of Colorado,
En Banc.

May 15, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H.

Forman, Sol. Gen., Paul R. McLimans, Sp. Asst. Atty. Gen., Craig, for petitioner.

Mark J. Fischer, Hayden, for respondent.

ERICKSON, Justice.

Defendant Charles Franklin Pronovost appealed from a judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child in violation of section 18-3-405, 8B C.R.S. (1986). The court of appeals reversed the conviction, holding that the trial court's refusal to allow the late endorsement of an expert witness for the defense denied the defendant his right to a fair trial. *People v. Pronovost*, 756 P.2d 387 (Colo.App.1987). We granted the prosecution's petition for certiorari to determine whether the trial court abused its discretion by excluding the defense expert's testimony for failure to comply with the court's discovery deadline. We affirm the court of appeals and accordingly approve the reversal and remand for a new trial.

A.B., then eleven-years old, and her friend, R.D., were playing on a grassy area located in the apartment complex where they lived on April 11, 1985. The children were approached by Pronovost, who was the manager of the complex. The testimony at trial reveals that Pronovost was friendly with all of the children living in the complex and obtained their trust and affection. A.B. ran up and hugged Pronovost, who asked A.B. and R.D. to enter a vacant townhouse with him. The townhouse was part of the apartment complex and consisted of two floors connected by an internal staircase.

After entering the townhouse, R.D. was given permission by Pronovost to go up to the second floor where he was out of sight of A.B. and Pronovost. Pronovost and A.B. sat down next to each other on the steps between the floors. Pronovost kissed A.B. on the cheek and reached around her, placing his hand under her sweatshirt. A.B. testified that Pronovost then attempted to fondle her breasts. When R.D. descended from the top floor, Pronovost removed his hands from A.B. A.B. ran home and reported the incident to her mother. The police were contacted and following an investigation, Pronovost was charged with sexual assault on a child.

Pronovost was arraigned on October 21, 1985, and entered a plea of not guilty. A two-day trial was scheduled for March 31, 1986. At the arraignment, pursuant to Crim.P. 16, the trial court ordered that mutual discovery be completed by February 14, 1986. Before the deadline expired, both parties filed certificates of discovery compliance and lists of anticipated trial witnesses.[1]

On Friday, March 28, 1986, the last working day before trial was to commence, Pronovost filed a motion to continue along with a speedy trial waiver. Pronovost sought a continuance of trial in order to endorse Dr. Philippus, a psychologist who would testify on behalf of Pronovost. The motion stated that the psychologist was contacted on March 27, 1986, and that he was the only psychologist Pronovost could afford. Pronovost argued in his motion that both he and his attorney had been engaged in efforts to contact other experts but no fee arrangement could be reached due to the defendant's moderate financial status. Pronovost also argued that he was entitled to an expert because the prosecu-

---

1. Two motions were filed by Pronovost in October and November of 1985. The first was a motion to suppress a statement made by Pronovost during police questioning that was denied without a hearing. The second was a motion in limine requesting a hearing to review the testimony of representatives from the Kempe National Center for Prevention and Treatment of Child Abuse (Kempe Center) and police officers alleging that the testimony "may be inadmissible on grounds of hearsay or be highly prejudicial where such prejudice may outweigh probativeness pursuant to CRE 403." The trial court ordered that a hearing be held on January 21, 1986 on the defendant's motion in limine. However, the record contains no evidence that the hearing ever occurred. Pronovost again sought to exclude the testimony of the Kempe Center representatives in his second motion in limine filed immediately before trial. A hearing was held on the second motion in limine during the noon break of the first day of trial. The trial court denied defendant's second motion in limine holding that the prosecution demonstrated an adequate and independent factual basis for the Kempe Center expert's opinion.

tion had endorsed three experts from the Kempe Center.

At the hearing on the motion, held on the morning of the first day of trial, counsel for Pronovost alternatively sought permission for the late endorsement of Dr. Philippus in the event a continuance was denied. The defense asserted that the prosecution would have an opportunity to review Dr. Philippus's report "over the weekend" and that Philippus would testify on the second day of trial. When given the opportunity to make an offer of proof, counsel for Pronovost stated that based upon an interview and psychological testing of defendant, Dr. Philippus would testify that Pronovost had a "truthful character" and that he did not fit the "typical patterns or profiles" of a person who would molest a child. The trial court denied the defendant's request for a continuance on the ground that Pronovost failed to timely endorse the psychologist as a witness. The defense then requested that Dr. Philippus be permitted to testify as a rebuttal witness in response to the prosecution's experts. Because Dr. Philippus was not endorsed in a timely manner, the trial court also denied that request.

The court of appeals, in reversing the conviction, applied a balancing test to determine if Pronovost's constitutional rights were violated by the exclusion of the expert testimony. The balancing test used by the court of appeals was found in *Chappee v. Massachusetts*, 659 F.Supp. 1220 (D.Mass.1987). The *Chappee* balancing test, adopted by the court of appeals, is a different test than the test we set forth in *People v. Hampton*, 696 P.2d 765 (Colo. 1985) (*Hampton I*), although the two tests are to some extent parallel. The court of appeals concluded that the exclusion of Dr.

Philippus's testimony violated Pronovost's sixth and fourteenth amendment rights, was an abuse of discretion by the trial court, and constituted reversible error.

## I.

We first determine whether the preclusion of Dr. Philippus's testimony for violation of the trial court's discovery order was an abuse of discretion. The trial court's order was predicated on Crim.P. 16, which describes the requirements and procedures for discovery in criminal cases. Pursuant to Crim.P. 16, the trial court has the authority and discretion to order the prosecution to disclose the identities of the witnesses that will be called to testify at trial. *See* Crim.P. 16(I)(a)(1)(I) (the prosecution must disclose to defense counsel the names and addresses of witnesses, together with their written and recorded statements).[2] Subject to constitutional limitations, the trial court may also require that the defense disclose the nature of any defense to be raised at trial and the names and addresses of defense witnesses. *See* Crim.P. 16(II)(c); *see also People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975) (defendant's duty to disclose); II ABA Standards For Criminal Justice, Discovery & Procedure Before Trial, § 11–3.3 (2d ed. 1986) (defendant's duty to disclose nature of defense and witnesses).[3]

Crim.P. 16(III)(g), entitled "Regulation of Discovery: Failure to Comply; Sanctions" provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court

---

**2.** Crim.P. 16(I)(a)(1)(I) was amended September 9, 1985, effective January 1, 1986. The prosecution's duty to disclose witnesses is now set forth in Crim.P. 16(I)(a)(1)(V).

**3.** Neither the prosecution nor Pronovost challenge the exercise of the trial court's discretion in ordering that all witness disclosure and discovery be completed by February 14, 1985. At the time of the trial court's order, October 21, 1985, Crim.P. 16 contained no specified time limits for the completion of discovery. Accord-

ingly, defendant was not prejudiced by the February 14, 1985 deadline because he submitted his original disclosure documents on time and did not attempt to endorse Dr. Philippus until over one year later, three days before trial. We note, however, that effective July 1, 1985, Crim.P. 16(V)(b) provides that defendant, if required by the court to do so, must disclose the names and addresses of his witnesses in compliance with Crim.P. 16(II)(c) "not later than thirty days before trial."

may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.

Crim.P. 16(III)(g) gives a trial court broad discretion in considering motions to endorse witnesses and in fashioning remedies for violations of a trial court's discovery orders. *People v. District Court*, 664 P.2d 247, 252 (Colo.1983); *see also* II ABA Standards For Criminal Justice, Discovery & Procedure Before Trial, § 11–4.7 (2d ed. 1986) (listing sanctions substantially similar to Crim.P. 16(III)(g)). We first address the circumstances under which a trial court may exclude a defense witness's testimony because of the attempted late endorsement of the witness, and second, whether the trial court in this case abused its discretion.

■ In *People v. Hampton*, 696 P.2d 765 (Colo.1985) (*Hampton I*), we addressed the issue of whether a defendant's constitutional right to call witnesses or to testify in his own defense was violated by a rule preconditioning the presentation of an alibi defense on pretrial disclosure. We first noted in *Hampton I* that the right of an accused to call other witnesses in defense of the charge, like the right to testify in his own defense, is a fundamental component of due process of law. *Hampton*, 696 P.2d at 774; *see, e.g., Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *People v. Curtis*, 681 P.2d 504 (Colo.1984). Accordingly, the exclusion of relevant and competent evidence offered in defense of a criminal charge is a severe sanction, implicating the defendant's right to present a defense and ultimately the right to a fair trial. *Hampton*, 696 P.2d at 778 (citing *Chambers*, 410

U.S. at 302, 93 S.Ct. at 1049; *Washington*, 388 U.S. at 19, 87 S.Ct. at 1923; *Hendershott v. People*, 653 P.2d 385, 391 (Colo. 1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983)).

In addressing the constitutional limits of judicial discretion to exclude relevant and competent defense evidence, we said:

While the sanction of exclusion remains, within the limits of constitutional application, a matter of judicial discretion, several courts have held that, because of the significance of the rights at stake, the exercise of that discretion must be properly informed by an adequate inquiry into and consideration of the circumstances underlying the defendant's noncompliance and the effect of the exclusion sanction on both the prosecution and the defense. The factors pertinent to the court's ultimate determination include the following: *[1] the reason for and the degree of culpability associated with the failure to timely respond to the prosecution's specification of time and place; [2] whether and to what extent the nondisclosure prejudiced the prosecution's opportunity to effectively prepare for trial; [3] whether events occurring subsequent to the defendant's noncompliance mitigate the prejudice to the prosecution; [4] whether there is a reasonable and less drastic alternative to the preclusion of alibi [or other defense] evidence; [5] and any other relevant factors arising out of the circumstances of the case.*

*Hampton*, 696 P.2d at 778. (citations omitted) (emphasis added).

We hold that the multi-factor balancing test in *Hampton I* delineating the limits of the trial court's discretion when excluding alibi evidence, with some modification, applies with like force to a situation where, as here, the trial court excluded the defendant's expert evidence after the defendant failed to timely endorse an expert witness.[4]

---

**4.** The *Hampton I* multi-factor balancing test squares with *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

In *Taylor*, the defendant failed to disclose a witness in his "Answer to Discovery." As a sanction for failure to identify the witness, the

trial court excluded the witnesses' testimony. The Supreme Court acknowledged that "few rights are more fundamental than that of an accused to present witnesses in his own defense." *Id.* 108 S.Ct. at 652. However, the right is not absolute and must be weighed against the

The limitations on a trial court's discretion to exclude an expert witness are equivalent to the limitations on the court's discretion to exclude alibi evidence since both are derived from the same protections found in the sixth and fourteenth amendments. *See* U.S. Const. amends. VI & XIV; *Chambers*, 410 U.S. 284, 93 S.Ct. 1038; *Washington*, 388 U.S. 14, 87 S.Ct. 1920; *People v. Curtis*, 681 P.2d 504. In *Hampton I*, we addressed Crim.P. 16(II)(c) and compliance with Crim.P. 12.1, which requires disclosure of an alibi defense, and said: "In a fashion similar to the alibi rule, a court may require a defendant to inform the prosecuting attorney of any defense intended to be used at trial and the names and addresses of witnesses to be called in support thereof." *See People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975). The disclosure of witnesses pursuant to Crim.P. 16(II)(c) is subject to the same constitutional limitations as the disclosure of an alibi defense. Since July 1, 1985, Crim. P. 12.1 has been included as part of Crim.P. 16.[5] Accordingly, we reject the court of appeals' application of the rule found in *Chappee v. Massachusetts*, 659 F.Supp. 1220 (D.Mass.1987),[6] and instead apply the balancing test in *Hampton I*.

## II.

■ *Hampton I* established a five-pronged balancing test. The first prong addresses the reason for the late endorsement and the culpability of the defendant. The reason the defendant failed to comply with the discovery deadline is not disputed in this case. It is conceded that the defendant's failure to comply with the discovery deadline was not willful or done in bad faith. In his motion for a continuance, defense counsel states that both he and Pronovost "made efforts to contact other experts on behalf of Defendant, but no

government's interest in the fair conduct of a criminal trial. *Id.* at 655. The Court said:

> [T]he mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* The Court declined to set forth the exact elements of the balancing test to be employed, but suggested that "[a] trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial." *Id.*

5. Crim.P. 16(II)(d) is similar to Crim.P. 12.1 and provides:

> Notice of Alibi. The defendant, if he intends to introduce evidence that he was at a place other than the location of the offense, shall serve upon the prosecuting attorney as soon as practicable but not later than thirty days before trial a statement in writing specifying the place where he claims to have been and the names and addresses of the witnesses he will call to support the defense of alibi. Upon receiving this statement, the prosecuting attorney shall advise the defendant of the names and addresses of any additional witnesses who may be called to refute such alibi as soon as practicable after their names become known. Neither the prosecuting attorney nor the defendant shall be permitted at the trial to introduce evidence inconsistent with his specification, unless the court for good cause and upon just terms permits the specification to be amended. If a defendant fails to make the specification required by this section, the court shall exclude evidence in his behalf that he was at a place other than that specified by the prosecuting attorney unless the court is satisfied upon good cause shown that such evidence should be admitted.

6. The court of appeals adopted a five-factor balancing test developed by the Massachusetts Federal District Court in *Chappee v. Massachusetts*, 659 F.Supp. 1220 (D.Mass.1987), to determine if a defendant's sixth and fourteenth amendment rights were violated when the state court excluded the testimony of three expert witnesses. The factors comprising the *Chappee* balancing test are: "(1) whether the discovery violation was willful or in bad faith; (2) the materiality of the evidence excluded; (3) the extent to which the prosecution will be surprised or prejudiced; (4) the effectiveness of less severe sanctions; and (5) whether the defendant himself knew of or cooperated in the discovery violation." Although *Chappee* is factually similar to this case, we believe that the *Hampton I* balancing test provides Pronovost with adequate constitutional protection. We also note that the federal test elaborated in *Chappee* is somewhat parallel to the *Hampton I* standard, in as much as it inquires into the importance of the excluded evidence, the degree of defendant's culpability regarding the late disclosure, and the availability of alternative remedies. We find it unnecessary to complicate the legal precedent in this area by applying *Chappee* in addition to *Hampton I.*

acceptable fee agreement could ever be reached due to the Defendant's moderate financial status." The motion also claims that Dr. Philippus was not contacted until Thursday, March 27, 1986, and that he was the only potential expert who had agreed to a fee arrangement that Pronovost could afford. Defense counsel's factual assertions regarding the endorsement of Dr. Philippus are not disputed and no claim is made that Pronovost acted willfully or in bad faith in failing to comply with the discovery order.

The second prong is directed to prejudice the prosecution might suffer in preparing for trial. In this case, the prosecution prepared and presented extensive expert testimony independent of information obtained from the defendant, and the nondisclosure did not prejudice the prosecution's opportunity to effectively prepare for trial. The prosecution presented the unrebutted testimony of Dr. Susan Van Scoyk, a psychiatrist affiliated with the Kempe Center. Dr. Van Scoyk testified that in August, 1985, a team of Kempe Center experts on child abuse evaluated A.B.'s allegations of sexual assault. She further testified that the evaluation demonstrated that A.B. acted in a manner psychologically consistent with that of a "typical" victim of sexual abuse. Because the prosecution's case was based entirely on lay, police, and expert witnesses, its case was not predicated on information held by the defense, whether disclosed or not disclosed. Accordingly, the nondisclosure of an expert witness for the defense did not prejudice the prosecution's opportunity to effectively prepare for trial.

The third prong is whether events occurring subsequent to the defendant's noncompliance mitigate the prejudice to the prosecution. Although the prosecution may claim some surprise by the late endorsement of Dr. Philippus, the prosecution would not have been "prejudiced" by Pronovost's late endorsement of Dr. Philippus. The prosecution's case was based in part on expert testimony. The denial of the right to call Dr. Philippus in the defense-in-chief or by way of rebuttal gave the prosecution the opportunity to present uncontroverted expert testimony. Defense counsel offered to make Dr. Philippus's report available to the prosecution on the first day of trial and agreed to permit cross-examination by the prosecution on the second day of trial.

The remaining two factors pertain to the prejudice potentially suffered by the defendant as a result of the trial court's preclusion of the evidence. Thus, we inquire whether there was a less drastic alternative to the preclusion of the expert witness's testimony and whether other relevant factors arise out of this case. Three less drastic alternatives were available to the trial court. The court could have continued the trial, allowing both parties time to prepare for Dr. Philippus's testimony. A second alternative would have been to allow Dr. Philippus to testify on the second day of trial, after the prosecution had an opportunity to review his report. In that instance, had the trial court allowed Dr. Philippus to testify, the danger of any prejudice to the prosecution was minimal because Dr. Van Scoyk was available to testify in rebuttal. Finally, the trial court could have allowed Dr. Philippus to testify as a rebuttal witness in response to Dr. Van Scoyk.

Under *Hampton I*, as a "further relevant factor," the defendant was denied the opportunity to put on an expert witness in response to the expert testimony presented by the prosecution. Denying Pronovost the opportunity to present his expert's testimony in response to the prosecution's expert testimony constituted an abuse of discretion and violated Pronovost's rights to present witnesses in his defense. *See* U.S. Const. amends. VI & XIV; *Taylor*, 108 S.Ct. 646; *Chambers*, 410 U.S. 284, 93 S.Ct. 1038; *Washington*, 388 U.S. 14, 87 S.Ct. 1920; *Hampton I*, 696 P.2d 765; *Curtis*, 681 P.2d 504.[7]

---

**7.** We also granted certiorari to determine whether opinion evidence to establish a "sexual profile" for sex offenders was properly excluded. *See* Annotation, *Admissibility of Expert Testimony as to Criminal Defendant's Propensity Toward Sexual Deviation*, 42 A.L.R. 4th 937, 946–49 (1985 & 1988 Supp.); *see also* Annotation, *Admissibility at Criminal Prosecution of*

We conclude that the trial court committed reversible error in denying Pronovost his constitutional right to present an expert witness in his defense. Accordingly, we affirm the judgment of the court of appeals and remand for a new trial.

VOLLACK, J., does not participate.

*Expert Testimony on Battering Parent Syndrome,* 43 A.L.R. 4th 1204 (1986). The offer of proof was woefully inadequate to comply with CRE 702, and *People v. Hampton,* 746 P.2d 947, 951 (Colo.1987). We do not address the admissibility of "sexual profile" opinion evidence because of the inadequacy of the record before us.