**Pete James CUMMINGS, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 88SC368.

Supreme Court of Colorado,
En Banc.

Jan. 16, 1990.

Rehearing Denied Feb. 12, 1990.

As Modified Feb. 15, 1990.

Leo Wotan, Jr., Loveland, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

Justice ROVIRA delivered the Opinion of the Court.

This case involves defendant's appeal from his conviction entered on a jury verdict finding him guilty of two counts of first-degree murder. He contends that he was deprived of effective assistance of counsel by his trial counsel's failure to collaterally attack his prior felony conviction for aggravated assault in a timely manner. He also contends that his attorney's opening statement accusing defendant's wife of the murders did not constitute an implied waiver of the marital privilege. The court of appeals in *People v. Cummings*, 768 P.2d 718 (Colo.App.1988),

rejected his arguments. We affirm in part and reverse in part.

## I

On September 4, 1984, police discovered the bodies of Joseph Watkins and Denean Dean in an automobile parked a few blocks from the residence of the defendant, Pete James Cummings, and Gloria Falls, his common-law wife. Later that day, the defendant called the Aurora Police Department and stated that he had seen a television report describing the discovery of the bodies and that he thought he knew "the people involved." He requested that the police come to his house and discuss the matter.

When the police arrived, the defendant told the officers that Watkins and Dean had been to his house on September 3, 1984, for dinner with him and Falls and had left at approximately 11:00 p.m.

Further investigation by the police led to the issuance of a warrant for a search of the defendant's home. Certain items were recovered, including: a jar of .22 caliber ammunition, a knife, blood-stained furniture, and a semi-automatic .22 caliber rifle which was found concealed in the garage.

The defendant was charged with two counts of first-degree murder and Falls was charged with being an accessory to these crimes.[1] Falls told police that she had seen the defendant shoot Watkins and Dean and dispose of their bodies.

Prior to trial, the defendant, claiming that Falls was his common-law wife, moved to prevent Falls from testifying against him. The basis of his claim was the statutory marital privilege. § 13–90–107(1)(a), 6A C.R.S. (1987). After an evidentiary hearing, the trial court concluded that a common-law marriage existed between the defendant and Falls, and granted the defendant's motion to prohibit Falls from testifying.

---

1. The defendant was charged with two counts of first-degree murder, § 18–3–102(1)(a), 8B C.R.S. (1986), subject to the provisions of section 16–11–309, 8A C.R.S. (1989), which provides for mandatory sentences for violent crimes.

Falls pleaded guilty to being an accessory to the crime, § 18–8–105, 8B C.R.S. (1986), and received a two-year deferred sentence.

After the jury had been impaneled and the district attorney made his opening statement, the defendant's trial counsel[2] made an opening statement during which he conceded that Watkins and Dean had been murdered in the living room of the defendant's home and that, aside from the victims, only Falls and the defendant had been present. Counsel admitted that the defendant had attempted to conceal the crime and had done so to protect his wife. After discussing the relationship between the defendant, Falls, and the victims, counsel said:

Later on that evening after discussions as to who was going to have sex with who, Mr. Cummings left, went to the store. The police will tell you also that he stated he went to a 7 Eleven. In fact, he did. He came back some time later.

When he came into the home at 1909 Lansing Street, which again, ladies and gentlemen, there's no doubt about it; it's a crime scene. When he came into that particular home, Gloria Falls was there. Gloria Falls was upset. Gloria Falls in fact had a rifle in her hand.

When he walked in, also there was Denean Dean and Joe Watkins. The difference is that now Denean Dean and Joe Watkins were in fact dead.

. . . .

Like I said, ladies and gentlemen, what we have here is not a mystery like the district attorney has said. What we have here is a story of a gentlemen that wants his wife to be free, that would rather take the rap for his wife, that helped hide these particular items.

Mr. Cummings—there's no doubt whatsoever this was stupidity. This is maybe in your mind pervert [sic] what he tried to do to help this woman. But at the most Mr. Cummings is guilty of accessory after the fact, nothing more. He's not guilty of first-degree murder of Denean Dean. He's not guilty of first-degree murder of Joseph Watkins. He's guilty of trying to protect a loved one.

The prosecution then requested the court to find that because the defendant was

claiming that his wife killed Watkins and Dean, he had waived the marital privilege. Over the objection of the defendant, the trial court found that there had been a waiver of the marital privilege and permitted the People to call Falls as a witness. Falls testified that the defendant shot the victims and removed the bodies from the house.

At the conclusion of the prosecution's case-in-chief, the defendant sought to collaterally attack his prior felony conviction for aggravated assault in Kansas in 1978. The prosecutor objected, noting that defendant's counsel had been made aware of the conviction more than seven months before trial, and this issue should have been raised before trial.

Defense counsel admitted that he had known of the Kansas conviction for a "long time," but that he had only been informed by the defendant approximately two weeks before trial as to the grounds for collaterally attacking the conviction. Counsel stated that there were two bases on which he wished to attack the Kansas conviction. First, he claimed that the defendant had not been adequately advised of his right to testify in the prior proceeding; and secondly, that the defendant had received ineffective assistance of counsel.

The trial court denied the defendant's request to challenge the prior conviction, holding that the issue should have been raised prior to trial "so that we've got plenty of time in which to make a proper determination of this and afford everyone the opportunity to fairly defend against or present evidence to justify setting aside any previous conviction...."

After being advised that the defendant would not take the witness stand, the trial court advised him that if he wanted to testify no one could prevent him from doing so, but that the prior felony conviction could be disclosed to the jury and the jury would be instructed to consider the conviction only as it related to the defendant's credibility. The defendant was also advised of his right not to testify. The defen-

---

**2.** The defendant is represented by new counsel in this appeal.

dant then stated that he would not testify because of the prior felony.

## II

The defendant contends that but for his trial counsel's failure to attack the Kansas conviction in a timely manner, such attack would have been considered by the trial court; and if successful, he would have exercised his right to testify. He also claims that the outcome of the trial might have been different if he had testified. By way of relief, the defendant requests that the case be remanded to the trial court for a hearing on the admissibility of the prior conviction, and that a new trial be granted if the prior conviction is found to be constitutionally infirm.

█ Convictions which involve the violation of fundamental constitutional rights may not be used in subsequent proceedings to support guilt or enhance the punishment of the defendant. *People v. Roybal*, 618 P.2d 1121 (Colo.1980). Such convictions are of limited reliability and "abridge the very charter from which the government draws its authority to prosecute anyone." *People v. Germany*, 674 P.2d 345, 349 (Colo.1983).

In *Apodaca v. People*, 712 P.2d 467 (Colo.1985), the trial court refused to rule upon defendant's pretrial motion, which requested a ruling as to whether the prosecution could use a prior conviction to impeach the defendant if he elected to testify, until such time as the district attorney actually sought to use the conviction for impeachment purposes. We held that the trial court's failure to rule impermissibly burdened the defendant's constitutional right to testify and remanded the case for a determination as to whether the prior conviction was constitutionally valid. Similarly, in *Bales v. People*, 713 P.2d 1280 (Colo. 1986), we found the trial court erred in denying defendant's motion, filed on the first day of trial, to collaterally attack his prior conviction. Accordingly, we remanded the case to the district court so that an

evidentiary hearing on the merits of the defendant's claim could be held.

Here, however, defense counsel waited until the conclusion of the state's case-in-chief to notify the trial court and the prosecutor that he wished to collaterally attack defendant's prior felony conviction, so that it could not be used to impeach the defendant, if he elected to testify. The trial court held that the collateral attack had not been timely asserted. The court noted that a determination of the constitutionality of the defendant's Kansas conviction, at this stage of the trial, would either require a substantial delay in the proceedings or would, in effect, deprive the prosecutor of an adequate opportunity to prepare a rebuttal to the defendant's challenge.[3]

A similar situation was considered by the court in *United States v. Murray*, 492 F.2d 178, 196–97 (9th Cir.1973), *cert. denied*, 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974), which held that the defendant's request for such a ruling, in the midst of trial, came too late. The *Murray* court noted that the defendant could have challenged the validity of his prior convictions before trial. The court held that the time which would be required to conduct such an evidentiary hearing would involve "an intolerable interruption in what was, in any event, to be a long jury trial." *Id.* at 197. *See also United States v. Cook*, 608 F.2d 1175, 1185 (9th Cir.1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980) (approving the *Murray* decision on this issue and noting such a rule "encourage[s] counsel to make the motion early in order to obtain pretrial rulings"); 3 J. Weinstein & M. Berger, *Evidence* § 609(11) at 127 (1988); D. Louisell & C. Mueller, *Federal Evidence* § 324 at 380 (1979); *cf., People v. Jansen*, 713 P.2d 907, 912 n. 8 (Colo.1986) (motion to suppress fruits of search should be filed prior to trial and be adequately descriptive so that both the prosecution and the court will be on notice of the issues to be decided).

---

3. In order to consider this motion, it is likely that a transcript of the Kansas proceedings would have been· required. Contacting those who were involved in the prior proceeding would also require a significant amount of time.

■ Crim.P. 12(b)(1) provides that "[a]ny defense or objection which is capable of determination without the trial of the general issue may be raised by motion." [4] Resolving these types of issues prior to trial furthers important policy considerations, because it avoids the interruption of the trial process by consideration of auxiliary inquiries which may adversely affect the continuity of the jury's attention, and which may cause serious personal inconvenience to both jurors and witnesses. Further, resolution of these types of issues prior to trial enables both the defendant and the prosecution to more effectively prepare for trial. For example, in *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C.Cir.1980), the court noted that "[g]enerally, the question of which convictions will be usable to attack credibility should be determined prior to trial. Counsel needs to know what the ruling will be on this important matter so that they can make appropriate tactical decisions." *See also United States v. Oakes*, 565 F.2d 170, 171 (1st Cir.1977) (the court's decision regarding the use of prior convictions for impeachment purposes "may have a significant impact on opening statements and the questioning of witnesses"). Whenever feasible, these matters should be resolved prior to trial.

■ The trial court is given broad discretion regarding the administration of court proceedings. *See, e.g., People v. Pronovost*, 773 P.2d 555 (Colo.1989); *see also United States v. Halbert*, 668 F.2d 489 (10th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982) (considerable discretion should be given to trial courts in their resolution of motions to

exclude prior convictions). This discretion is intended to enable the court to resolve, in a timely and equitable manner, the infinite variety of situations which arise throughout the judicial process. However, this broad discretion is not unlimited. In *People v. Pronovost*, 773 P.2d 555 (Colo.1989), we held that the trial court abused its discretion by excluding a defense expert's testimony for failure to comply with the court's discovery deadline. There we used a multifactor balancing test to determine whether the trial court exceeded the bounds of its discretion. The factors considered in *Pronovost* are relevant here, with some modification, to the determination of whether the trial court abused its discretion when it denied the defendant's motion to collaterally attack his prior conviction.[5]

■ The first factor is the reason for and the degree of culpability associated with the defense's failure to raise this attack in a pretrial motion. Here, defense counsel had all the information needed to collaterally attack the defendant's prior conviction before trial. Our review of the record provides no indication as to why this matter was not considered at that time.

Secondly, we consider whether and to what extent this failure to raise the issue prejudiced the prosecution's opportunity to effectively prepare for trial. The nondisclosure of defendant's intention to collaterally attack his prior conviction, until after the prosecution rested its case, prejudiced the prosecution by effectively depriving it of the time which would be needed to prepare for this challenge. In *United States*

---

**4.** Collateral attack of a defendant's prior conviction, so that it may not be used for impeachment purposes in the event the defendant elects to testify, is normally an issue which may be resolved prior to trial. *See, e.g., Apodaca v. People*, 712 P.2d 467 (Colo.1985).

**5.** The People argue that *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), is applicable here. In *Apodaca v. People*, 712 P.2d 467, 473 n. 9 (Colo.1985), we noted that the result reached in *Luce* was not constitutionally mandated. Instead, the Supreme Court was resolving a dispute among the circuits as to the

application of Federal Rule of Evidence 609, which has not been adopted by Colorado. Subsequently, in *People v. Clark*, 705 P.2d 1017, 1020 (Colo.App.1985), *cert. denied*, the court of appeals cited *Luce* in support of its conclusion that the defendant's failure to testify at trial precluded his appeal of the trial court's ruling that fingerprint evidence could be used for impeachment purposes if he elected to testify.

Because of our application of the multifactor balancing test adopted in *Pronovost*, we find it unnecessary to consider the applicability of the *Luce* holding.

*v. Fountain,* 642 F.2d 1083, 1087 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981), the court noted that "advance planning is in the best interest of the parties and of the judicial system.... Trial by ambush may produce good anecdotes for lawyers to exchange at bar conventions, but tends to be counterproductive in terms of judicial economy." (Citations omitted.)

The third factor applied in *Pronovost* considers "whether events occurring subsequent to the defendant's [actions] mitigate the prejudice to the prosecution." *People v. Pronovost,* 773 P.2d 555, 558 (Colo.1989). Here, the absence of an adequate opportunity to prepare for the defense challenge could only have been mitigated by a substantial interruption in the trial.

Finally, in *Pronovost* we examined whether there was a reasonable and less drastic alternative available. We believe that there was not a reasonable, less drastic alternative available to the trial court. Allowing the defendant to collaterally attack the prior Kansas conviction in the midst of trial would have either resulted in a substantial delay in the proceedings or required the prosecution to proceed without the information it would need to adequately meet the defendant's challenge. Alternatively, barring the use of defendant's prior conviction for impeachment purposes would deprive the jury of probative information needed for evaluation of the defendant's credibility.

Our analysis of these factors leads to the conclusion that the trial court acted within the bounds of its discretion when it denied defendant's motion to collaterally attack his Kansas conviction. Having concluded that the trial court did not err, we now consider the defendant's claim that he was deprived of effective assistance of counsel because of his trial counsel's failure to collaterally attack his conviction in a timely manner, and this failure prevented him from testifying for fear of impeachment by the prior conviction.

■ The court of appeals rejected this claim, holding that there was no showing that the defendant's testimony would have created a reasonable doubt about his guilt, and because the defendant did not testify and made no offer of proof as to what his testimony would have been, the court was unable to determine whether he was prejudiced by his counsel's representation. The court also noted that since there was no way of ascertaining whether the defendant's prior felony conviction would have been suppressed, it was unable to determine from the record whether the result would have been different if defendant's counsel had attacked the prior conviction in a timely manner. *People v. Cummings,* 768 P.2d 718, 720 (Colo.App.1988).

Our review of the record leads us to conclude that an evidentiary hearing is necessary to resolve the defendant's claim of ineffective assistance of counsel. Trial counsel did not make offers of proof as to why the prior felony was unconstitutionally obtained, and what the defendant's testimony would have been if he had taken the stand. The record in this case does not establish the basis for trial counsel's decision not to raise the issue before trial, nor disclose why offers of proof were not made. We believe that the claim of ineffective assistance of counsel under these circumstances should initially be evaluated by the trial court upon an adequate record. After a hearing, the trial court should then make specific findings as to whether the attorney's performance fell below an objective standard of reasonableness, and, if so, whether the deficient performance resulted in prejudice to the defendant. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### III

■ The defendant also contends that the trial court erred when it held that the statements made by defense counsel in his opening statement constituted a waiver of the marital privilege. The marital privilege, which in Colorado is statutorily defined, derives from the much criticized common-law rule which bars spousal testimony, regardless of its content. *See People v. Lucero,* 747 P.2d 660, 665–67 (Colo.1987). The privilege is intended to shield the hold-

er from the nonconsensual disclosure of privileged information. The scope of the privilege is not limited to confidential communications. *Id.* at 665. The Colorado provision provides in pertinent part:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

(a) A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage....

§ 13–90–107(1)(a), 6A C.R.S. (1987).

■ The holder of the privilege may, however, waive its protections. The party seeking to overcome the privilege bears the burden of showing that the privilege holder has "expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Clark v. District Court,* 668 P.2d 3, 8 (Colo.1983). *See also Miller v. District Court,* 737 P.2d 834, 838 (Colo.1987); *People v. Deadmond,* 683 P.2d 763, 771 (Colo.1984); *Bond v. District Court,* 682 P.2d 33, 38 (Colo.1984).

■ A general denial of liability by the defendant does not constitute a waiver of the privilege. *Clark v. District Court,* 668 P.2d 3, 9–10 (Colo.1983). Instead, it must be shown that the holder, by words or conduct, has abandoned his claim of confidentiality. *See Miller v. District Court,* 737 P.2d 834 (Colo.1987); *Clark v. District Court,* 668 P.2d 3, 8 (Colo.1983). The holder of the privilege will not be permitted to "absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim." *Clark v. District Court,* 668 P.2d 3, 10 (Colo.1983). *See also Bond v. District Court,* 682 P.2d 33, 38 (Colo.1984). For example, in *People v. Worthington,* 113 Cal.Rptr. 322, 38 Cal. App.3d 359 (1974), the court held that the defendant impliedly waived the marital

privilege when he testified that his wife had committed the murder for which he was charged. The court noted that:

It seems incredible to us that defendant could fail to realize that in disclosing what he claimed the wife had told him, a confession of murder, he was inviting a response from the wife as to her version of the conversation ... it would be the ultimate irony if one spouse can, under the guise of "squealing" on the other, silence the other's response to his charges....

*Worthington,* 113 Cal.Rptr. at 326.

Here, the defense attorney, in his opening statement, in effect accused the defendant's common-law wife, Gloria Falls, of committing the murders. An opening statement informs the jury of what counsel expects the evidence to show. *People v. Bustos,* 725 P.2d 1174, 1177 (Colo.App. 1986).

■ Defense counsel's statement outlined the defendant's theory of the case which he attempted to substantiate throughout the trial. The marital privilege may be waived by the acts or omissions of trial counsel. *See United States v. Dien,* 609 F.2d 1038, 1044 (2d Cir.1979) (failure to invoke marital privilege at suppression hearing constituted a waiver of the privilege); *United States v. Burkhart,* 501 F.2d 993, 995 (6th Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975) ("Any marital privilege that may have existed was waived when appellant introduced his wife's statements during cross-examination of the government witnesses."); *United States v. Figueroa–Paz,* 468 F.2d 1055 (9th Cir.1972) (failure to make timely objection waived marital privilege); *Canaday v. United States,* 354 F.2d 849, 857 (8th Cir.1966) (privilege waived by counsel's failure to make timely objection to spouse being called as a witness); *Paulson v. State,* 455 So.2d 85, 88 (Ala.Crim. App.1984) (counsel waived privilege by asking spouse about defendant's criminal activity occurring after marriage); *People v. Odmann,* 160 Cal.App.2d 693, 325 P.2d 495 (1958) (failure to object to spouse being called as a witness constituted a waiver of

the marital privilege); *Simms v. State,* 492 P.2d 516, 521 (Wyo.), *cert. denied,* 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142 (1972) (statement made by counsel at pretrial conference constituted an express waiver of the marital privilege). By accusing his wife of the murders, the defendant invited a response which necessarily could have come only from her. We conclude that the trial court was correct when it held that there was a waiver of the marital privilege and permitted her to testify.

Accordingly, the judgment of the court of appeals is affirmed in part, reversed in part, and the case is remanded to the court of appeals with directions to remand this cause to the district court for further proceedings consistent with the opinion of this court.

VOLLACK, J., concurs in part and dissents in part.

ERICKSON, J., joins in the concurrence and dissent.

Justice VOLLACK concurring in part and dissenting in part:

I concur in the majority's holding that the trial court correctly held that defense counsel's opening statement constituted a waiver of the marital privilege. Maj. op. at 927. I also concur in the majority's holding that the trial court did not abuse its discretion when it denied the defendant's motion to collaterally attack his Kansas conviction. Maj. op. at 925. I disagree, however, with the majority's holding that the trial court must hold a hearing to determine whether defense counsel's performance was constitutionally deficient under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Criminal defendants may make ineffective assistance of counsel claims in post-trial motions before the trial court under Crim.P. 33. If a defendant's motion is based on ineffective assistance of counsel that defendant must establish the truth of the allegations on which he bases his motion for a new trial and produce evidence of his counsel's ineffectiveness. *See Maynes v. People,* 178 Colo. 88, 93, 495 P.2d 551,

553 (1972) (trial court fully considered defendant's ineffective assistance of counsel claim in motion for a new trial); *People v. Loggins,* 709 P.2d 25, 28 (Colo.App.1985); *People v. Hernandez,* 695 P.2d 308, 310 (Colo.App.1984) (juror misconduct); *Commonwealth v. Bannister,* 15 Mass.App. 71, 75, 443 N.E.2d 1325, 1329 (1983) (" '[t]o the extent that the defendant's motion [for a new trial based on ineffective assistance of counsel] was based on facts which were neither agreed upon nor apparent on the face of the record, he had the burden of proving such facts' ") (quoting *Commonwealth v. Bernier,* 359 Mass. 13, 15, 267 N.E.2d 636 (1971)). "In cases alleging ineffective assistance of counsel, the trial court must judge the reasonableness of the attorney's conduct on the basis of all of the factual circumstances of the particular case, viewed in light of the prevailing standards of minimally acceptable professional conduct at the time of the challenged conduct." *People v. Pozo,* 746 P.2d 523, 527 (Colo.1987) (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). If a criminal defendant can demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, he is entitled to a new trial under Crim.P. 33. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

A criminal defendant may also obtain a hearing on his claim of ineffective assistance of counsel by collaterally attacking his conviction under Crim.P. 35(c). When a criminal defendant makes a motion for post-conviction relief under Crim.P. 35(c) he is entitled to an evidentiary hearing "unless the motion, the files, and the record of the case 'clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant post-conviction relief.' " *White v. Denver Dist. Court,* 766 P.2d 632, 634 (Colo.1988) (quoting *People v. Hutton,* 183 Colo. 388, 391, 517 P.2d 392, 394 (1973)); *see also Pozo,* 746 P.2d at 530 (remanding for further evidentiary hearing in Crim.P. 35(c) motion brought by defendant on grounds of ineffective assistance of counsel). A defendant who is able to establish that he was denied

his sixth amendment right to effective assistance of counsel under the standards announced in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, is entitled to relief under Crim.P. 35(c)(3).

If a defendant chooses to raise an ineffective assistance of counsel claim for the first time on appeal, without an evidentiary hearing at the trial court, he must still establish that his claim satisfies the standards announced in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052. Such a defendant elects at his own peril to stand on the trial record as grounds for his claim of ineffective assistance of counsel. This court has previously expressed a preference for having ineffective assistance of counsel claims resolved in post-trial motions or in proceedings under Crim.P. 35. In *Stone v. People*, 174 Colo. 504, 512, 485 P.2d 495, 499 (1971), the defendant asserted for the first time on appeal that he received ineffective assistance of counsel. We noted that, "[o]rdinarily, a defendant would have been expected to raise the matter of competency of counsel in [his earlier Crim.P.] 35(b)[1] [motion]." *Id.*, at 512, 485 P.2d at 498–99. We excused the defendant's failure to raise his ineffective assistance of counsel claim in his Crim.P. 35(b) motion, however, on the ground that at the time he filed the motion he was represented by the same counsel that had represented him at trial. *Id.*, 485 P.2d at 499. We then held that "[u]nder these particular circumstances, if the defendant wishes to continue to urge the point of incompetency of counsel by reason of counsel preventing defendant from testifying, he may do so in a further 35(b) proceeding in the trial court." In the present case the defendant through counsel other than trial counsel raised for the first time on appeal the question of his trial counsel's competence. The court of appeals ruled on the trial record that the defendant had failed to meet his burden under *Strickland*. I would affirm the court of appeals decision on this question without further remand. I would not second-guess counsel's reasons for raising the question for the first time on appeal.

I am authorized to say that ERICKSON, J., joins in this concurrence and dissent.

---

1. At the time *Stone* was decided, the substantive provisions of what is now Crim.P. 35(c) were contained in Crim.P. 35(b). *See* Crim.P. 35(b), 1 C.R.S. (1963).