**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Floyd E. BURKHART, Defendant-
Appellant.**

No. 74–1269.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1974.

Decided Aug. 29, 1974.

John Kennedy Lynch, Cleveland, Ohio, for defendant-appellant.

J. Edward Friedland, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff-ap-pellee; Frederick M. Coleman, U. S. Atty., Robert R. Bauer, First Asst. U. S. Atty., Cleveland, Ohio, Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., on briefs.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant Floyd E. Burkhart was indicted on April 12, 1973, on five counts of wilfully and knowingly understating income tax due for the years 1966 through 1970, in violation of 26 U.S.C. § 7201. A jury found him not guilty on counts I, II, III and V, but convicted him on count IV, pertaining to 1969. This is a direct appeal from his conviction and sentence of ten days' imprisonment and a $3500 fine.

The Government introduced items of unreported income from the operation of Appellant's farm in Bucyrus, Ohio. Evidence showed that for 1969 Appellant had reported taxable income of $8,868.-51, but had not reported other taxable income of $32,261.21, resulting in an omitted tax due of $12,222.31. There was evidence that Appellant knew at the time he filed his 1969 return that it incorrectly stated his income, and there was sufficient evidence for the jury to infer that the understatement had been wilful.

Appellant makes four objections on appeal.

First, Appellant claims that in order to prove its case the Government must establish not only that Appellant received certain unreported items of income but also that Appellant actually received the amount of income that he did report. Appellant's argument is that by not corroborating the receipt of income reported in his 1969 return, the Government failed to prove that Appellant actually received a substantial amount of farm subsidy income which Appellant reported on his 1969 return. If farm subsidy income was $0 in 1969, rather than the amount reported, Appellant

argues, the unreported income would not substantially exceed the amount reported, so that there would be no understatement of income.

■ ■ Appellant's superficially ingenious argument confuses the rule requiring corroboration of certain extrajudicial admissions [1] with the Government's burden in a tax evasion case. The Government must prove a substantial understatement of income. In so doing, it may take the taxpayer's reported income as an admitted amount earned from designated sources. If it can then show that considerable additional amounts were received but not reported, it has established a *prima facie* case of substantial understatement. *Cf.* United States v. Campbell, 351 F.2d 336, 339 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 884, 15 L.Ed.2d 662 (1966); United States v. Shavin, 320 F.2d 308, 311 (7th Cir.), cert. denied, 375 U.S. 944, 84 S.Ct. 349, 11 L.Ed.2d 273 (1963); United States v. Doyle, 234 F.2d 788, 794 (7th Cir.), cert. denied, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956); United States v. Bender, 218 F.2d 869, 872 (7th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); Schuermann v. United States, 174 F.2d 397 (8th Cir.), cert. denied, 338 U.S. 831, 70 S.Ct. 69, 94 L.Ed. 505, reh. denied, 338 U.S. 881, 70 S.Ct. 156, 94 L.Ed. 541 (1949). The Government need not corroborate the receipt of income which Appellant reported on his 1969 return.

Second, Appellant argues that he was deprived of a fair trial because the prosecutor commented on Appellant's failure to call his wife to the stand. Appellant had argued that some farm income had been unreported because he was operating the farm in a joint venture with his parents, who were entitled to the unreported income. Appellant's wife was privy to essential conversations bearing on the credibility of his defense, and in his closing argument the prosecutor asked the jury to disbelieve the joint venture defense, partly on the basis that Appellant had not called his wife to testify. Appellant did not object to this statement.

■ This circuit recently outlined the requirements for allowing a prosecutor to comment on a defendant's failure to produce certain witnesses. In United States v. Blakemore, 489 F.2d 193, 195 (6th Cir. 1973), we held that prosecutorial comment on failure to produce a witness was proper only where the witness is peculiarly within the defendant's control and the witness' testimony would elucidate the transaction in question. Both conditions are satisfied here, because Appellant was in control of his wife's testimony and because her testimony would have elucidated the transactions which were the basis of Appellant's "joint venture" defense. Furthermore, in this case Appellant injected his wife's testimony into the dispute. He challenged the testimony of two Government witnesses by asking whether his wife had made statements to them which would undermine their claims. Yet, he failed to call his wife to the stand to verify what he claimed she had told the witnesses. Thus, Appellant attempted to use his wife's silence as implicit support for her statements, since the jury would assume that her testimony would support Appellant, and as implicit refutation of the Government's witnesses. In such a circumstance, we must permit the Government to argue the contrary inference that Appellant's failure to call his wife to the stand meant that her testimony would have damaged him. *Cf.* Himmelfarb v. United States, 175 F.2d 924, 951 (9th Cir. 1949). Any marital privilege that may have existed was waived when Appellant introduced his wife's statements during cross-examination of the Government witnesses.

1. In Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), the Government was required in net worth cases to corroborate oral and written statements made by the defendants relating to essential elements of the cases against them.

▉ Third, Appellant argues that there was no proof of venue, an essential element of the case. But Appellant failed to object to venue until after the Government's case had been completed. The objection was thereby waived. United States v. Fabric Garment Co., 262 F.2d 631 (2d Cir. 1958), cert. denied, 359 U.S. 989, 79 S.Ct. 1117, 3 L. Ed.2d 978 (1959). Furthermore, venue may be proved circumstantially, and there was sufficient circumstantial evidence to show that the 1969 tax return had been prepared in the Northern District of Ohio, a proper basis for venue. United States v. U. S. District Court, 209 F.2d 575 (6th Cir. 1954).

Appellant's fourth objection relates to a communication between judge and jury. After deliberating for about an hour and a half, the jury sent a written note to the District Judge, stating, "If vote is *not guilty,* does the defendant have to pay his taxes and penalties?" The District Judge conferred with counsel and determined initially that he would answer that a not guilty verdict would have no effect on Appellant's civil liabilities for back taxes and civil penalties. The Government objected, arguing that this was not an issue in the case. The District Court agreed and wrote this response: "The issues in this case to be considered and decided by the jury have been set forth in the Court's instructions. The question you have raised is not in issue in this case."

▉ Both sides agree on the legal relationship between civil and criminal tax proceedings. A not guilty verdict in a criminal case has no effect on the Government's ability to collect back taxes and penalties in a civil case. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 S.Ct. 917 (1938); Heindel v. United States, 150 F.2d 493 (6th Cir. 1945). The matter of civil liability is not an is-

sue when a jury is determining a defendant's criminal liability for tax evasion.

Appellant argues that the jury's question demonstrated that it believed Appellant was innocent but was unwilling to acquit him if it meant that Appellant would escape his tax liability. Another way to view the jury's question, however, is that the jury believed Appellant was guilty as charged but was willing to excuse him if it was assured that he would have to pay his back taxes.

▉ Thus, the District Judge was faced with the problem of avoiding prejudice to Appellant out of jury concerns which were extraneous to a proper finding of guilt or innocence and of not encouraging the jury to acquit Appellant for similarly irrelevant reasons. Without stating a rigid rule,[2] we believe that the District Judge chose the proper course in this case. Rather than advising the jury about the legal effect of an acquittal on Appellant's civil liability, he told the jurors that civil liability for back taxes was not an issue in the criminal case and that the jury should follow his instructions in determining Appellant's innocence or guilt. We cannot find error in this response.

By not advising the jury of an acquittal's effect on Appellant's civil obligations, the District Court re-emphasized the jury's obligation to uphold their oath —to follow the law in determining innocence or guilt. The jury was properly told to ignore everything but the facts presented and their legal charge in arriving at a verdict. As Mr. Justice Holmes wrote in Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920):

"[T]he jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the

---

2. If, for instance, a jury said, "We believe. Defendant X is not guilty, but we want him to pay his back taxes. If we acquit him, will he escape his obligations?," the trial judge would be virtually forced to purge the trial of prejudice by telling the jury that

their verdict would have no effect on the Government's ability to collect Defendant X's back taxes.

A standard cautionary statement might be that any civil obligations would be the subject of a separate proceeding.

law is upon this or that state of facts that may be found. . . ."

In our system of jury justice, the judge must state the law, though the jury is free to indulge in vagary and compromise once the case is sent to the jury room. United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48 (1943); Dunn v. United States, 284 U.S. 390, 394, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Although the jury stands as a bulwark against laws which it deems unjust or excessively harsh, United States ex rel. Toth v. Quarles, 350 U.S. 11, 18–19, 76 S.Ct. 1, 100 L.Ed. 8 (1955); Duncan v. Louisiana, 391 U.S. 145, 155, 157, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1965),[3] it is not the judge's place to advise the jury of the possible collateral effects of their decision, information that has nothing to do with the legal standards which they have sworn to apply.

We come to a final consideration. Even though the District Judge's instructions were correct and even though neither judge nor prosecutor injected an impermissible element into the case, a new trial would be necessary if we were convinced that the verdict was the direct result of a groundless fear that Appellant would escape his tax obligations unless the jury found him guilty. There is no significant indication that Appellant's conviction rests on such a prejudiced ground. "A mere suspicion . . . that the jury has not followed the court's instructions is not sufficient [for reversal], since that would make the verdict too vulnerable and would needlessly prolong litigation." 6A J. Moore, Federal Practice 59–140 (1974). "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." Dunn v. United States, 284 U.S. 390, 394, 52 S.Ct. 189, 191, 76 L.Ed. 356 (1932).

The judgment of the District Court is affirmed.

PECK, Circuit Judge (concurring).

I am in entire agreement with the disposition of the first three issues in the majority opinion, but have reservations concerning the fourth. In the circumstances I feel that the preferable course would have been for the trial judge to have made a direct response to the jury's question, but concur on the ground that it was not an abuse of discretion for him to decline to do so. It is unfortunate that the colloquy between court and counsel did not occur in the presence of the Court Reporter and that a verbatim record thereof is therefore not available for review.

3. The present law of "jury nullification" (the jury's power to acquit a defendant out of refusal to apply the law to facts clearly evidencing a criminal violation) seems not to require or permit a judge to tell the jury that it has the right to ignore the law as charged but to allow a defense attorney some leeway in persuading the jury to acquit out of considerations of mercy or obedience to a higher law. See Scheflin, "Jury Nullification: The Right to Say No," 45 So.Cal.L. Rev. 168 (1972); W. Forsyth, History of Trial by Jury 217–20 (2d ed. 1875); Kunstler, "Jury Nullification in Conscience Cases," 10 Va.J.Int'l L. 71 (1949); Note, "Toward Principles of Jury Equity," 83 Yale L. J. 1023 (1974).

Our approval of the District Judge's response is in line with the current standards on jury nullification, under which the judge attempts to persuade the jury to apply the legal standards he charges, to the exclusion of concerns beyond those standards.