NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0686n.06
Filed:  August 9, 2005

No. 04-3781

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　Plaintiff-Appellee,

　　　　v.

RONNIE A. STEPHENS,
　　　　Defendant-Appellant.

On Appeal from the
United States District Court for the
Northern District of Ohio

---

Before:  KENNEDY, CLAY, and GILMAN, Circuit Judges.

**KENNEDY, Circuit Judge**.  The defendant was found guilty by a jury on two counts of attempted tax evasion in violation of 26 U.S.C. § 7201.  The district court sentenced the defendant to 33 months imprisonment.  The defendant appeals from both his conviction and sentence.  In appealing his conviction, he argues that the district court erred when it refused to permit his counsel to elicit certain testimony from two witnesses.  Specifically, the defendant contends, the district court erred when it refused to permit defendant's counsel to introduce evidence that the defendant had voluntarily agreed to submit to a polygraph examination.  Moreover, the defendant asserts, the district court erred when it refused to permit defense counsel to introduce evidence that even if the defendant were found not guilty of the criminal charges, he would still be civilly liable for his back taxes. Finally, with respect to his sentence, the defendant maintains that his Sixth Amendment right to trial by a jury was violated when the district court enhanced his sentence under a mandatory guideline regime based upon facts not admitted by the defendant or found by a jury beyond a

1

reasonable doubt. For the following reasons, we AFFIRM the defendant's conviction, VACATE the defendant's sentence, and REMAND for re-sentencing in light of *Booker*.

BACKGROUND

A grand jury indicted the defendant on three counts of attempted tax evasion for the years of 1997, 1998, and 1999 for not reporting $1,680,846 of income over those years.[1] During those years, the defendant reported income only from his regular day job with the United States Department of Defense, Defense Finance and Accounting Service (DFAS), plus other modest amounts of interest, dividends, capital gains, and rental income.

The sources of unreported income were the defendant's fees as minister of the Abundant Life Church and the defendant's spiritual consulting income from his client Robin Lipsky. As minister of the Abundant Life Church, the defendant received, if funds were available, $500 per week. The defendant did not report this income to the IRS. The substantial majority of the defendant's unearned income, however, was obtained from Robin Lipsky. The defendant met Lipsky, a wealthy New York City resident who receives most of her income from family trusts, in 1985 at the home of a mutual friend who had studied tarot card reading with the defendant and who had invited the defendant to give tarot card readings. At the defendant's trial, Lipsky testified that she and the defendant maintained occasional contact until, in the late 80s, Lipsky agreed to become a client of the defendant. Lipsky initially agreed to pay the defendant $2,500 per month for spiritual counseling conducted over the phone approximately once or twice a week. Later, they agreed to increase the

---

[1] The indictment alleges that the defendant's actual income for the years of 1997 through 1999 was $520,749, $671,470, and $570,308 respectively, for a total of $1,762,527. The income the defendant actually reported for those years was only $38,359, $41,567, and $40,114, for a total of $81,681. The difference between his alleged actual income and reported income was $1,680,846.

2

fee to $5,000 per month based on more frequent phone sessions. Beyond the monthly fees, Lipsky would pay the defendant substantial "overages" for additional services, including prayer work, meditation, and ritual work. The amount of these "overages" charges ranged from $10,000 to $25,000. From 1996 to 1999, Lipsky paid the defendant approximately $2,000,000 for his spiritual counseling services.

In April of 2001, two IRS special agents contacted the defendant to notify him that he was under criminal investigation pertaining to his 1996 through 1999 income tax liabilities. Around the same time, the defendant contacted Lipsky and told her that he wanted to repay some of the money that she had "loaned" him. After she said that she had not loaned him any of the money she sent him, he responded by telling her that if anyone called her about the money she should say that he was repaying a loan. In late November or early December of 2001, Lipsky received a telephone message from an IRS special agent asking her to call him back regarding the defendant. Before returning the call, Lipsky spoke with the defendant twice. During the first conversation, he reminded her of his earlier admonition to tell anyone who called that she had made him a loan. In the second call, he again asked her to tell the agent she had made him a loan.

During the presentation of its case-in-chief, the government also called Department of Defense Special Agent Robertson to testify. In November of 1999, before the defendant was under investigation for tax evasion, Agent Robertson interviewed the defendant as part of an investigation into embezzlement in the DFAS unit that the defendant supervised. The investigation did not uncover participation by the defendant in the embezzlement. Aside from his supervisory role, the defendant caught Agent Robertson's interest because of a published news article that the defendant was building a new home at a cost of $435,000. Agent Robertson inquired as to the defendant's

3

source of money to build this home. The defendant responded that nearly half the money came from a bank loan, and that the other half came from savings and from loans from wealthy friends. The defendant refused to tell Agent Robertson the name of these wealthy friends. When Agent Robertson asked the defendant if he had sources of income outside of his DFAS income, the defendant replied that he had a position with a local church that provided him with income on an irregular basis.

During the trial, the government called Agent Robertson to testify to establish the defendant's consciousness of guilt by his false and deceptive responses that he had borrowed money from numerous wealthy friends, whose names he would not reveal, and by not disclosing his counseling business. On cross-examination, defense counsel sought to elicit testimony that the defendant, at the end of Agent Robertson's interview of him, offered to take a polygraph test. As disclosed on Robertson's voir dire examination, the defendant never took the polygraph examination because his attorney subsequently placed conditions on the test which were unacceptable to the government. The district court refused to permit defense counsel to elicit from Agent Robertson that defendant offered to take a polygraph test.

During the trial, the government also called IRS Special Agent Curtis to testify. Agent Curtis was responsible for the criminal investigation of the defendant's suspected tax evasion. During re-cross of Agent Curtis, defense counsel pursued a line of questioning attempting to establish that a tax evader who is not indicted for tax evasion would nonetheless be subject to civil tax assessment proceedings. The district court refused to permit defense counsel from continuing this line of questioning and informed the jury that "the IRS has the right to proceed both criminally and civilly" against a tax evader.

4

After both sides rested, the jury returned a guilty verdict on counts 1 and 2, relating to the defendant's tax evasion in 1997 and 1998, and returned a not guilty verdict on count 3, the defendant's alleged tax evasion in 1999. In sentencing the defendant, the district court applied the 1998 Guidelines. The district court determined that the defendant's base offense level was 18 because the tax loss was greater than $550,000 but less than $950,000. *See* United States Sentencing Commission, Guidelines Manual, § 2T4.1(M) (Nov. 1998). The amount of the tax loss supported by the jury's verdict was $413,677.[2] The district court concluded, however, that the tax loss from 1996 was relevant conduct and included that loss in determining the total loss. The statute of limitations barred the government from charging the defendant with tax evasion for 1996. The district court found that the tax loss from 1996 was $161,144, and determined that the defendant's base offense level was 18, since the total loss was greater than $550,000 but less than $950,000. U.S.S.G. § 2T4.1(M). The district court then applied a two level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, finding that the defendant attempted to persuade Robin Lipsky to make false statements to the government. With a criminal history category of I and a total offense level of 20, the Guideline recommended range was 33 to 41 months. The district court sentenced the defendant to 33 months' imprisonment.

ANALYSIS

---

[2] The jury found the defendant guilty on counts 1 and 2 in the indictment. Count 1 of the indictment alleged that the defendant owed $185,229 and paid $7,541, for a total still owed of $177,688. Count 2 of the indictment charged that the defendant owed $244,335 and paid $8,346, for at total still owed of $235,989. The total tax loss is thus $413,677.

We first consider the defendant's arguments that the district court improperly excluded relevant evidence. We review these determinations of the district court for abuse of discretion. We will not find that the district court abused its discretion unless we are of the firm and definite conviction that the district court committed a clear error of judgment. *United States v. Jones*, 403 F.3d 817, 820 (6th Cir. 2005).

The defendant argues that the district court erred when it refused to permit defense counsel to elicit testimony that the defendant had offered to take a polygraph test after he was asked as to the sources of money financing the construction of his new home during an investigation into embezzlement at the DFAS. We have noted that "in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible if it is relevant" at trial. *Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir. 1987). "In considering the admissibility of polygraph-related evidence, this circuit follows Federal Rule of Evidence 403. Thus, the trial court must first determine whether the proffered evidence is relevant. If the court finds that the evidence is relevant, it must then balance the probative value of the evidence against the hazard of unfair prejudice and jury confusion." *United States v. Harris*, 9 F.3d 493, 502 (6th Cir. 1993).

The defendant argues that his willingness to take a polygraph test is relevant to his consciousness of innocence. While willingness to submit to a polygraph test may be relevant to such an issue in some instances, the circumstances of this case reflect that the relevance of the defendant's willingness to submit to a polygraph test was "marginal, at best." *See Wolfel*, 823 F.2d at 974; *United States v. Bursten*, 560 F.2d 779, 785 (7th Cir. 1977) (finding "no error in the trial court's refusal to permit defendants to state that they would have been willing to submit to" a polygraph

6

test, since such "evidence is so unreliable and self-serving as to be devoid of probative value"). In this case, the defendant did not agree to allow the result of the examination, whatever it might reflect, to be admitted into evidence. Thus, the defendant did not have the "requisite 'adverse interest at stake to cloak his willingness with credibility.'" *Harris*, 9 F.3d at 502 (quoting *Wolfel*, 823 F.2d at 974). Moreover, his willingness to take a polygraph test also lacks relevance because the statement of his willingness to take the test was not in response to whether he evaded taxes, the issue in this case, but rather to a question concerning the sources of money used to finance his new home. Finally, in light of the marginal, at best, relevance of the defendant's willingness to take a polygraph exam, we note that the showing of prejudice need not be substantial. The waste of time that would result from the inquiry into this collateral issue, both on cross-examination and on re-direct, is a sufficient reason to exclude the evidence in this case. Thus, we conclude that the district court did not abuse its discretion in excluding evidence of the defendant's willingness to take a polygraph test.

We next consider the defendant's contention that the district court erred when it refused to permit defense counsel to introduce evidence that if the defendant were found not guilty, such a verdict would not absolve the defendant of his civil tax liability. The defendant complains that the district court abused its discretion when it sustained the government's objection to the following questioning by defense counsel. To place it in context, the government had called IRS Special Agent Charles Hunter as a rebuttal witness concerning statements the defendant made to Agent Hunter at a conference following the completion of the IRS' criminal investigation. On cross examination, the following colloquy between defense counsel and Agent Hunter occurred:

> Q.     [Agent Hunter] you told [the defendant] that you were talking to him for two purposes? One, he was going to be prosecuted, correct?

7

A.      One was that he was talking to me because he had the opportunity to provide any defenses, any information he wanted [to tell me] before I made a recommendation to the Department of Justice.

Q.      And the second was for civil purposes, correct?

A.      No.

Q.      Well, look at your second paragraph, sir.

A.      The civil numbers were given to him as the numbers of potential tax liability in the case.

Q.      And does he still face that tax liability?

A.      Once this matter is concluded, yes, he will have to settle civilly.

Q.      And that is irrespective of the outcome of this case, correct?

A.      Yes

Q.      Okay.  Assuming the IRS is successful [in its civil action against] him, which is a different . . .

At this point, the government's counsel objected to this line of questioning.  The court sustained the objection.  The court then informed the jury that the IRS had the right to proceed both criminally and civilly against the defendant.

The defendant asserts that, in refusing to permit defense counsel to clarify to the jury that even if the defendant were found not guilty, he would still be subject to a civil action, the district court allowed a conviction based on the jury's fear that the defendant would escape liability for his back taxes if he were acquitted.  We previously noted in dicta in another tax evasion case that "if we were convinced that [a guilty verdict] was the direct result of a groundless fear that [the defendant] would escape his tax obligations unless the jury found him guilty," a new trial would be necessary.  *United States v. Burkhart*, 501 F.2d 993, 997 (6th Cir. 1974).  In this case, there is absolutely no evidence that

8

such a fear existed. Rather, any such speculative fear that may have existed would have been dispelled by defense counsel's questioning of Agent Hunter regarding civil liability, which although objectionable, did not garner an objection from the government until after defense counsel specifically asked Agent Hunter, "irrespective of the outcome of this case," the defendant "will have to settle civilly, correct," to which Agent Hunter replied, "Yes."

Moreover, we will not permit the defendant to manufacture a fear that the jury might find a defendant guilty because it believes that otherwise the defendant might escape his tax liability. The rule is that "[t]he matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion." *Id.* at 996. A defendant's introduction of evidence concerning potential tax liability could prejudice the government. For instance, after a defendant informs a jury that even if the defendant were found not guilty the defendant would still be subject to tax liability, jurors may be more likely to excuse the defendant from criminal liability, even though they believe the defendant is guilty, since they are assured that the defendant would still have to pay his back taxes. *See id.* Thus, when the issue of civil liability invades a criminal case for tax evasion, the proper course is for the district court to note that "civil liability for back taxes [is] not an issue in [a] criminal case," *id.*, or, as the district court did here, inform the jury that the IRS has the right to proceed both criminally and civilly against a defendant. In conclusion, we find that the district court did not abuse its discretion in excluding evidence of the defendant's potential future civil tax liabilities.

Finally, we address the defendant's argument that his Sixth Amendment right to trial by a jury was violated when the district court enhanced his sentence under a mandatory guideline regime based upon facts not found by a jury beyond a reasonable doubt. In *United States v. Booker*, 125 S. Ct. 738,

9

755-56 (2005), the Supreme Court held that the Sixth Amendment as construed in *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the federal sentencing guidelines. Thus, *Booker* made applicable to the Guidelines the Supreme Court's past holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" or else the Sixth Amendment is violated. *Id*. at 756.

The defendant asserts that the district court increased his sentence based upon facts not found by a jury when it included the alleged tax loss from 1996 (which was not charged because the statute of limitations had expired) in calculating the total tax loss. Including the tax loss from 1996, the court found that the defendant's base offense level was 18, since the tax loss was more than $550,000 but less than $950,000. *See* U.S.S.G. § 2T4.1(M). The total tax loss supported by the jury's verdict of guilty on counts 1 and 2 of the indictment was $413,677. A tax loss of this amount would result in a base offense level of 17. *See* U.S.S.G. § 2T4.1(L) (More than $325,000 but less than $550,000). The defendant also asserts that the district court increased his sentence based upon facts not found by a jury when it enhanced the defendant's offense level by two points upon finding that the defendant attempted to persuade Robin Lipsky to make false statements to the government. *See* U.S.S.G. 3C.1.1. The district court, relying upon judge-found facts, determined that the defendant's total offense level was 20. The Guidelines-recommended sentencing range for this offense level (and a criminal history category of I) was 33 to 41 months. The total offense level as supported by the jury's verdict alone was 17. The Guideline-recommended range for this offense level was 24 to 30 months. Thus, based on facts that were neither admitted by the defendant nor presented to a jury, the applicable sentencing range was increased. The district court's reliance on judge-found facts to

increase the defendant's sentence under mandatory guideline violated the Sixth Amendment. We thus vacate the defendant's sentence and remand for re-sentencing. *See United States v. Yagar*, 404 F.3d 967, 969 (6th Cir. 2005). For the foregoing reasons, we AFFIRM the defendant's conviction, VACATE the defendant's sentence, and REMAND for re-sentencing in light of *Booker*.