

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00328-CR

JENNIFER NALLS                                                           APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F15-617-211

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Jennifer Nalls appeals her conviction for felony driving while intoxicated (DWI) for which she was sentenced to thirty-five years' imprisonment. *See* Tex. Penal Code Ann. § 49.09(b) (West Supp. 2017). In nine issues, Nalls argues that the trial court reversibly erred by denying her motion to suppress her

---

[1]*See* Tex. R. App. P. 47.4.

blood-draw results, by making various evidentiary rulings during punishment, and by sustaining the State's objection to a portion of her closing argument during punishment and by instructing the jury to disregard that portion. Because we hold that the trial court did not abuse its discretion by making the challenged rulings or that any error from the rulings was not harmful, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At 2:55 p.m. on December 17, 2014, Nalls rear-ended a Chevy Tahoe that was stopped at a red light in Highland Village, which caused the Chevy Tahoe to collide with the vehicle in front of it. Officer Robert Fever responded to the scene. While speaking with Nalls, Officer Fever noticed that she had red, bloodshot eyes that appeared "watery, glassy"; that she had a hard time standing; that she slurred her speech; that she did not look directly at him when she spoke; and that her breath smelled of alcohol. Nalls denied having consumed any alcohol.

Due to inclement weather, Officer Fever sought and received permission from the manager of a nearby restaurant to use its entryway to conduct field sobriety tests (FSTs) on Nalls. The video recording from Officer Fever's body camera reflects that Nalls did not follow his instructions on the FSTs and that she appeared intoxicated. Based on Nalls's performance on the tests, Officer Fever arrested her for DWI and placed her in his patrol car.

2

While Nalls was seated in the patrol car, Officer Fever gave Nalls a copy of the DWI statutory warnings and began reading the warnings to her.[2] Nalls interrupted Officer Fever multiple times to say that he did not need to keep reading the warnings and that she was willing to give a specimen of her blood. After Officer Fever finished reading the warnings, he asked Nalls for a specimen of her blood, and she agreed. Officer Fever then transported Nalls to the emergency room.

At the emergency room, Officer Fever asked Nalls to sign the consent form for the blood draw, and she refused to sign. Officer Fever attempted to leave the exam room, but Nalls said that she wanted her car and wanted to go home. Officer Fever explained that her car was totaled and then left the room. While Officer Fever was at the nurses' station right outside Nalls's exam room, he heard her continue to say that she wanted to go home and that she wanted something to eat because she was "starving." Officer Fever went back into Nalls's exam room and asked her whether she was going to let the nurse take her blood, and Nalls said that she had not done anything wrong and wanted to go home. Officer Fever told Nalls that she was not going home. Officer Fever confirmed that Nalls was refusing to provide a blood specimen and explained that because she had revoked her consent to give a blood specimen, the next step would be for him to go to the police station and obtain a search warrant to draw

[2]See Tex. Transp. Code Ann. § 724.015 (West Supp. 2017) (setting forth information that officer must provide person before requesting a specimen).

3

her blood. Nalls asked whether she could eat, and Officer Fever said that she could not. Nalls said that she would give a specimen of her blood if she could have something to eat, and Officer Fever explained that the emergency room does not provide food prior to a blood draw and that she could not have anything to eat until she was booked into the jail. Officer Fever reiterated Nalls's choices: (a) provide consent to have her blood drawn or (b) have him obtain a warrant to draw her blood. Nalls chose "option a," consenting to have her blood drawn. Nalls sat upright on the bed and, after expressing her dislike of needles, allowed the nurse to perform the blood draw without incident. The blood-draw results show that Nalls's blood-alcohol concentration was 0.285 grams of alcohol per hundred milliliters of blood.

Nalls was indicted for DWI with two prior DWI convictions from 2000 and 2005, respectively. The indictment set out two enhancement paragraphs related to a final DWI offense from March 2007 (cause number F-2007-0009-C) and to a final DWI offense from January 2009 (cause number F-2008-1202-C).

Nalls filed a motion to suppress the blood-test results, which the trial court heard prior to the start of the trial. Officer Fever testified during the suppression hearing, and the video from his body camera, which recorded all of his interactions with Nalls, was admitted into evidence. After hearing Officer Fever's testimony and watching the body-cam video, the trial court concluded that based on the totality of the circumstances, Nalls freely and voluntarily consented to

4

have her blood drawn after she had revoked her consent. The trial court denied the motion to suppress.

A jury trial then commenced. After two days of testimony, the jury found Nalls guilty of DWI as alleged in the indictment and further found that Nalls had used a deadly weapon during the commission of the offense or during the immediate flight from committing it. After hearing evidence during punishment, the jury assessed Nalls's punishment at thirty-five years' confinement. The trial court sentenced Nalls in accordance with the jury's recommendation. This appeal followed.

### III. MOTION TO SUPPRESS

In her first issue, Nalls argues that the trial court reversibly erred by denying her motion to suppress the results of her blood draw. Nalls argues that the State failed to prove by clear and convincing evidence that her consent to the blood draw was voluntary.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at

5

673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We will uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

## B. Burden of Proof and Law on Consent

The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *Id.* at 333. A driver's consent to a breath or blood test must be free and voluntary—i.e., free from physical or psychological pressure from law enforcement. *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011). Critical to a consent analysis is that the factfinder must consider the totality of the circumstances in order to determine whether consent was given voluntarily. *Id.* at 459. "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Id.* "Accordingly, it follows that, because the [factfinder] must consider all of the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Fienen*, 390 S.W.3d at 333.

## C. Analysis

Nalls contends that she consented to the blood draw only because her will was overborne by Officer Fever. Nalls points to Officer Fever's statement about obtaining a warrant and argues that his statement was misleading because he

6

"made it sound as though [he] could for certain get a judge to sign a warrant . . . and thus her blood was inevitably going to be drawn whether she consented or not." Although Officer Fever conveyed what would happen with obtaining a blood search warrant in more definite terms than suggested by the statutory warnings,[3] he provided only the most basic information and did not linger or prolong the exchange by explaining in detail the intricacies of obtaining a warrant to draw her blood (e.g., that the blood search warrant must be approved by a neutral and impartial magistrate and that the judge may sign the blood search warrant only if he or she believes that it is supported by probable cause). The language Officer Fever used was not coercive when the surrounding circumstances are considered. *See id.* at 336 (citing various cases holding that consent to search, which was given in response to a threat to seek or obtain a search warrant, was voluntary); *Doremus v. State*, 530 S.W.3d 277, 284 (Tex. App.—Houston [14th Dist.] Aug. 15, 2017, pet. filed) (holding that officer's statements—indicating that police would draw appellant's blood either at police station or at hospital and mentioning that appellant would be subject to a "72-hour" mandatory lock up if he did not consent—did not overbear appellant's will).

Moreover, Nalls was aware that she could refuse the blood draw and did so upon her initial arrival at the emergency room. Upon Nalls's refusal, Officer

---

[3]The statutory warning provides that "if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person." *See* Tex. Transp. Code Ann. § 724.015(3).

Fever left the exam room to alert the nurse and the police station that Nalls had revoked consent and that he would be pursuing a blood search warrant. Throughout the time that Officer Fever was at the nurses' station outside Nalls's exam room, Nalls continued to state that she wanted to go home. It was only when Nalls started requesting food that Officer Fever responded by setting forth Nalls's two options. When Officer Fever explained Nalls's options to her, he did not use threats, deception, physical touching, or a demanding tone of voice or language. The video recording from Officer Fever's body camera reflects that his demeanor was consistently professional and accommodating. Nothing about Officer Fever's statements or demeanor put undue psychological pressure on Nalls.

Considering the totality of the circumstances, the record demonstrates that the State put on clear and convincing evidence that Nalls made a conscious and voluntary decision to consent to the blood draw. *See Fienen*, 390 S.W.3d at 336 (holding under totality of the circumstances that appellant, who went back and forth between refusing and giving consent, ultimately made a conscious and voluntary decision to consent to breath test and that officer's actions were not coercive); *Doremus*, 530 S.W.3d at 285 (holding that trial court could have reasonably concluded that appellant voluntarily consented to blood draw). Accordingly, we hold that the trial court did not abuse its discretion by denying Nalls's motion to suppress the blood-test results, and we overrule Nalls's first issue.

8

## IV. Evidentiary Rulings During Punishment

In her second through seventh issues, Nalls challenges the trial court's rulings on objections to various exhibits and testimony during the punishment phase. Because these issues challenge evidentiary rulings, we set forth the standard of review only once and refer to it, as necessary, in our analysis of each of these issues.

### A. Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016). A trial judge's decision is an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1024 (2006).

### B. Prior Conviction in Cause Number F-2007-0009-C

In her second and third issues, Nalls argues that the trial court reversibly erred when it overruled her objections to the first enhancement paragraph in the indictment relating to the judgment in cause number F-2007-0009-C and when it allowed the State to introduce that judgment into evidence. For both issues, Nalls argued at trial and similarly argues in her appellate brief that the conviction in cause number F-2007-0009-C is invalid because the indictment *in that case*

9

"incorrectly alleged that she was convicted of a DWI in a case in which she was actually convicted of violation of a protective order."

After her brief was filed but before this case was set for oral argument, Nalls filed with the Texas Court of Criminal Appeals a petition for writ of habeas corpus under Texas Code of Criminal Procedure section 11.07 collaterally attacking the conviction in cause number F-2007-0009-C.[4] *See* Tex. Code Crim. Proc. Ann. art. 11.07 (West 2015). During oral argument, the State informed this court that the court of criminal appeals had denied Nalls's petition for writ of habeas corpus without written order,[5] and in response, Nalls conceded that her second and third issues were no longer properly before this court. Because Nalls abandoned her second and third issues, we therefore need not address them. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to disposition of appeal).

### C. Nalls's Driving Record

In her fourth issue, Nalls argues that the trial court abused its discretion by admitting a certified copy of her driving record over her hearsay objection. As the State points out, this court has previously stated that

---

[4]*See Ex parte Nalls*, No. WR-87,365-02 (Tex. Crim. App. Oct. 20, 2017), *available at* http://search.txcourts.gov/Case.aspx?cn=WR-87,365-02&coa=coscca.

[5]*See Ex parte Nalls*, No. WR-87,365-02 (Tex. Crim. App. Nov. 22, 2017), *available at* http://search.txcourts.gov/Case.aspx?cn=WR-87,365-02&coa=coscca.

[a] driving record is a record of the Texas Department of Public Safety setting forth matters observed pursuant to [a] duty imposed by law and as to which matters the department had a duty to report. Consequently, they are not excludable under the hearsay rule. Inasmuch as the document [i]s a copy certified by its custodian to be correct, it require[s] no extrinsic evidence of authenticity in order to be admissible.

*Abbring v. State*, 882 S.W.2d 914, 916–17 (Tex. App.—Fort Worth 1994, no pet.) (internal citations omitted); *see also* Tex. R. Evid. 803(8), 902(4). Because Nalls's driving record is a self-authenticating public record, we hold that the trial court did not abuse its discretion when it admitted Nalls's driving record over her hearsay objection. *See Abbring*, 882 S.W.2d at 917; *see also* Tex. R. Evid. 803(8), 902(4). Accordingly, we overrule her fourth issue.

### D. Prior Conviction for Public Intoxication

In her fifth issue, Nalls argues that the trial court abused its discretion when it admitted the judgment from her prior conviction for public intoxication over her objection that the judgment did not contain fingerprints.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt (1) that a prior conviction exists and (2) that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* As stated by the court of criminal appeals,

[O]rdinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle.

11

> The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions.

*Id.* at 923 (quoting *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988) (op. on reh'g)). The trier of fact looks at the totality of the evidence admitted to determine (1) whether there was a previous conviction and (2) whether the defendant was the person convicted. *Id.* If the two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction. *Id.*

During the trial on punishment, Officer Duk Lee with the Lewisville Police Department testified that he arrested Nalls on September 29, 2003, for public intoxication. A judgment corresponding to Officer Lee's testimony was admitted into evidence. The judgment reflects that it was issued by the City of Lewisville Municipal Court, which is the same jurisdiction in which Nalls was arrested. The judgment contains Nalls's full name and her signature. The date of the judgment—September 29, 2003—corresponds to the date Officer Lee arrested Nalls. Officer Lee also provided the jury with Nalls's birth date and driver's license number. Prior to Officer Lee's testimony, the State admitted into evidence a certified copy of Nalls's driving record, which contains a picture of Nalls, her birth date, and her driver's license number. The jury, looking at the totality of the evidence, was free to compare Officer Lee's testimony to Nalls's driving record and to conclude that the State had proved beyond a reasonable

doubt that Nalls had a prior conviction for public intoxication in 2003 and that she was the same "Jennifer Renee Nalls" who was named in the 2003 judgment. *See id.* at 925 (comparing information in certified printout of appellant's conviction record to appellant's driver's license record and concluding that the State had proved beyond a reasonable doubt that appellant had a 1995 DWI conviction from Dallas County).

Nalls argues that the State did not link the prior conviction to her because the prior conviction does not contain a fingerprint. Nalls cites no authority, and we have found none, requiring fingerprints to link a prior conviction to a defendant. *See id.* at 921, 925 (holding that the State had proved up prior DWI conviction despite that conviction printout did not contain appellant's fingerprints); *Williams v. State*, 946 S.W.2d 886, 895 (Tex. App.—Waco 1997, no pet.) (holding that a rational trier of fact could have found that Williams is the same Andrew Earl Williams previously convicted of two DWI convictions based solely on information in driver's license and driving record); *cf. Carlock v. State*, 139 S.W.3d 90, 92–93 (Tex. App.—Texarkana 2004, no pet.) (holding that jury was rationally justified in concluding beyond a reasonable doubt that the "R.L. Carlock" referenced in the judgment was the same person as the defendant based solely on testimony from his prior parole officer and his neighbor).

Because the State established Nalls's 2003 public-intoxication conviction beyond a reasonable doubt, we hold that the trial court did not abuse its

discretion by overruling Nalls's objection to the 2003 judgment. We therefore overrule Nalls's fifth issue.

### E. Documents Related to Parental-Rights-Termination Case

In her seventh issue, Nalls argues that the trial court abused its discretion by admitting State's Exhibit Nos. 29 and 32—documents from her parental-rights-termination case—over her relevance and more-prejudicial-than-probative objections. On appeal, Nalls does not dispute that the exhibits are relevant but argues that they are more prejudicial than probative.

During the punishment phase, the State may offer evidence "as to any matter the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2017). What is relevant for the jury to hear during punishment is determined by whatever is helpful to the jury to enable it to tailor an appropriate sentence for the defendant. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. A trial court, when undertaking a rule 403 analysis, must balance the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against (1) any tendency of the evidence to suggest decision on an improper basis, (2) any tendency of the evidence to confuse or distract the jury from the main issues, (3) any tendency of the

14

evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010), *cert. denied*, 563 U.S. 1037 (2011). Furthermore, rule 403 does not require exclusion of evidence simply because it creates prejudice; the prejudice must be "unfair." *Id.*

State's Exhibit No. 29 is an affidavit from a Child Protective Services caseworker stating that Nalls drove while intoxicated with her two children in the car in 2001, and State's Exhibit No. 32 is the judgment terminating Nalls's parental rights to her two children based on endangering conduct and endangering environment. The probative value of these termination documents was high because they demonstrated to the jury that Nalls had previously endangered the lives of other individuals by driving while intoxicated. The State's need for the evidence was also high because the documents were necessary to assist the jury in tailoring a proper punishment for Nalls. The termination documents did not have a tendency to suggest a decision on an improper basis, did not have a tendency to confuse or distract the jury from the main issue of sentencing Nalls for felony DWI, and did not have a tendency to be given undue

15

weight. And Nalls concedes that the presentation of the evidence in State's Exhibit Nos. 29 and 32 did not consume an inordinate amount of time or merely repeat evidence already admitted.

Nalls argues that the probative value of the affidavit in State's Ex. 29 was limited because it contained hearsay. The rules of evidence, however, specifically state that "[i]nadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay." *See* Tex. R. Evid. 803. Nalls further argues that the probative value of the termination order in State's Ex. No. 32 was limited because the jury did not have the benefit of seeing and hearing the evidence that was admitted at the termination trial and thus was not properly equipped to evaluate the probative force of the evidence. Nothing in the record suggests that the jury was not equipped to evaluate the probative force of the termination order. *See Moreno v. State*, 409 S.W.3d 723, 731 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (concluding that fifth factor weighed in favor of admissibility where evidence was not technical or scientific in nature and was "comprehensible by laypeople").

After balancing the various rule 403 factors, the trial court could have reasonably concluded that the probative value of the termination documents in State's Exhibit Nos. 29 and 32 was not substantially outweighed by the other rule 403 factors. *See* Tex. R. Evid. 403, *Gigliobianco*, 210 S.W.3d at 642–43 (holding probative value of appellant's breath-test results was not substantially outweighed by other rule 403 factors); *cf. Smith v. State*, Nos. 02-05-00349-CR,

16

02-05-00350-CR, 02-05-00351-CR, 2006 WL 2830829, at *2 (Tex. App.—Fort Worth Oct. 5, 2006, no pet.) (mem. op., not designated for publication) (holding danger of unfair prejudice from evidence of appellant's drug use during pregnancy, her noncompliance with service plan, and the eventual termination of her parental rights—which was admitted during punishment phase of trial for possession of a controlled substance—did not substantially outweigh its probative value). Accordingly, we hold that the trial court did not abuse its discretion by admitting the documents from Nalls's parental-rights-termination case, and we overrule Nalls's seventh issue.

### F. State's Objections to Witness's Rambling Answer

In her sixth issue, Nalls argues that the trial court abused its discretion by sustaining the State's narrative and nonresponsive objections to a question asked of Nalls's aunt during the punishment phase. The question and response are as follows:

> [DEFENSE COUNSEL:] Ms. Purdy, you understand that we're here today at the sentencing portion because the jury has found her guilty, and now this portion is for them to hear evidence and then they will go back to deliberate to make a -- an assessment of her punishment?
>
> Is there anything that you would like to -- to tell the jury that they need to take into consideration before they do that?
>
> A. . . . It would just be an appeal because of her -- the -- the ignorance of the family, of myself in not pursuing harder because she was a real sweet little girl but just very troubled after the incident -- two incidents actually. And I didn't know about the first one till years later. I just knew about Saudi Arabia. But -- it's just -- it's just an appeal for a lesser -- because it -- at 40, she will -- according to

17

the time she gets out, it's -- I know how hard it has been for her to get jobs, and -- and that's why she took the Direct TV [job] and worked at home. And I always thought if she could just get out in public and -- and mix again and just be a part of it -- but, again, she was -- she was isolated, and to me that was just more of a punishment to her. But she felt like she had to get a job, had to work because some of the -- the rehabs that she was in, that's the thing they pushed the most. You've got to get a job. You've got to get a job. And I know one time her mom took her to about 14 places. And they hired her, and then when they found out that she was a felon, they -- they wouldn't take her. And so it has been rejection. And I'm sorry. I just -- It's very hard. It is. And normally I'm -- I'm tougher than this.

[PROSECUTOR]: At this point I would object to narrative and nonresponsive.

THE COURT: I'll sustain the objection.

Assuming, without deciding, that the substance of the excluded testimony is apparent from the context and that the trial court erred by sustaining the State's objection, we address whether such error is harmless. *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002) (requiring court that performs harmless error analysis to review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case). The record—which includes Nalls's prior felony DWI convictions, her driver's license history, videos from various officers' body cameras that recorded her behavior at the scene of the accident and throughout the arrest, and the documents from her parental-rights termination case—when

18

reviewed as a whole demonstrates that any such error in excluding Nalls's aunt's testimony—regarding how Nalls's prior felony convictions were already serving as her punishment because they isolated her and made it difficult for her to find employment—did not have a substantial or injurious effect on the jury's decision to assess Nalls's punishment at thirty-five years' confinement and did not affect her substantial rights and was therefore harmless. *See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) ("Under the circumstances, we have fair assurance that the evidence in question did not influence the jury or had but slight effect."). Thus, we disregard any error and overrule Nalls's sixth issue. *See* Tex. R. App. P. 44.2(b); *Solomon*, 49 S.W.3d at 365.

## V. JURY ARGUMENT

In her eighth issue, Nalls argues that the trial court abused its discretion by sustaining the State's objection and instructing the jury to disregard the part of her closing argument that asked the jury to ignore one of the enhancement paragraphs. Nalls contends that her trial counsel's argument constituted proper jury argument and that because she was entitled to make that argument, the trial court's ruling constitutes a denial of her right to counsel. The jury argument at issue is as follows:

> During voir dire you were asked the question about the range, 25 to 99. A lot of people said that 25 is too harsh. And I agree. Ladies and gentlemen, on page three you will see that if the -- if -- the judge read it to you, and I want you to pay attention. If the Defendant is sentenced to [a] term of imprisonment, she will not become eligible

19

for parole until the actual time served equals one half of the sentence imposed or 30 years.

Deter, rehabilitate[,] and punish. I'm asking you to find that not both of those paragraphs were true, that only one paragraph was true, and that her --

[THE STATE]: Objection, Your Honor. Improper argument. Asking for jury nullification.

THE COURT: Ladies and gentlemen, I'll sustain the objection. Please disregard the last statement of counsel.

We review a trial court's ruling on an improper-jury-argument objection by the State for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010), *cert. denied*, 565 U.S. 830 (2011). Permissible jury argument falls into four distinct categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008), *cert. denied*, 556 U.S. 1211 (2009). The improper denial of a jury argument may constitute a denial of the right to counsel. *Davis*, 329 S.W.3d at 825 (citing *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1060 (1990)). That "holding assumes, *inter alia*, that the jury argument is one the defendant is entitled to make." *Id.* Jury nullification[6] is not an argument that a defendant is entitled to make because

---

[6]Jury nullification refers to "the jury's power to acquit a defendant out of refusal to apply the law to facts clearly evidencing a criminal violation." *United States v. Burkhart*, 501 F.2d 993, 997 n.3 (6th Cir. 1974), *cert. denied*, 420 U.S. 946 (1975). Although the jury has the *power* to nullify, "it is the *duty* of the jury to

20

there is no constitutional right to jury nullification and because there is no constitutional requirement that the jury be instructed on nullification. *See Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198 (1997); *Stefanoff v. State*, 78 S.W.3d 496, 502 (Tex. App.—Austin 2002, pet. ref'd).

Nalls argues on appeal that she was entitled to make her jury nullification argument because it was a response to the State's argument that both enhancement paragraphs should be found true. Because the defendant does not have a constitutional right to instruct the jury on nullification, Nalls was not entitled to make an argument for jury nullification. Accordingly, we hold that the trial court did not abuse its discretion by sustaining the State's objection to Nalls's jury nullification argument. *See McGee*, 774 S.W.2d at 238 (holding that trial court did not abuse its discretion by rejecting appellant's argument, which was an incorrect statement of law and not an argument he was entitled to make); *Smith v. State*, No. 01-12-00423-CR, 2014 WL 2933220, at *7 (Tex. App.—Houston [1st Dist.] June 26, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by refusing to allow defendant to argue jury nullification); *Williams v. State*, No. 05-06-00797-CR, 2007 WL 914754, at *5 (Tex. App.—Dallas Mar. 28, 2007, no pet.) (not designated for publication) (same). We overrule Nalls's eighth issue.

follow the law as it is laid down by the court." *Sparf v. United States*, 156 U.S. 51, 74, 15 S. Ct. 273, 282 (1895) (emphasis added).

21

## VI. CUMULATIVE ERROR

In her ninth issue, Nalls argues that "[i]f none of the errors committed at the trial on punishment are reversible per se, then the errors present cumulative error requiring reversal when considered together."  Because we have held in each of her punishment-related issues above that no error occurred or that—in the instance of the exclusion of Nalls's aunt's testimony—the error was harmless, there is not enough harm to accumulate.  *See Murphy v. State*, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) ("Because we have found little or no error in the above-alleged points, there is no harm or not enough harm to accumulate."), *cert. denied*, 541 U.S. 940 (2004).  We therefore overrule Nalls's ninth issue.

## VII. CONCLUSION

Having overruled each of Nalls's nine issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 1, 2018